ATTORNEYS FOR APPELLANT
James D. Crum
Catherine M. Brownson
Carmel, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Brian L. Reitz
Gary R. Rom
Deputy Attorneys General
Indianapolis, Indiana



FILED
Feb 02 2012, 2:08 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

### No. 29S02-1109-CR-542

MICHAEL B. ADAMS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Hamilton Superior Court, No. 29D06-0910-CM-005841
The Honorable Gail Z. Bardach, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 29A02-1008-CR-00903

**February 2, 2012**

**Shepard, Chief Justice.**

The question here is whether an automobile passenger riding down the highway with a jar of marijuana between his legs can be found to have "used the vehicle" in committing the offense of possessing marijuana. We conclude that he can.

**Facts and Procedural History**

In the morning hours of September 30, 2009, Indiana State Trooper Jonathan Caddell was driving to Marion County to patrol an Indiana Department of Transportation construction zone. Around 6 a.m., Caddell observed a vehicle traveling south on Interstate 69 at ninety-four miles per hour.

Trooper Caddell pulled the vehicle over on the right shoulder and approached it on the passenger's side. Once at the window, he noticed that the passenger, Michael Adams, had placed his hand between the door and the seat. (Tr. at 39.) Caddell asked Adams to remove his hand, but Adams initially refused to do so. (Tr. at 39.) When Caddell asked a second time, Adams complied, but his hand was shaking visibly. (Tr. at 39.)

As he asked both Adams and the driver Jason Johnson for their identification, Trooper Caddell smelled raw marijuana, a scent he could distinguish from burning marijuana based on his training. (Tr. at 27–28, 30–31.) Caddell returned to his own vehicle to check for invalid licenses and outstanding warrants.

When Trooper Caddell returned to Johnson's vehicle, he asked both occupants to exit the vehicle one at a time. (Tr. at 31.) He took both occupants to the back of the vehicle, placed them in handcuffs, and read them their <u>Miranda</u> rights. At that point, Johnson admitted that he had smoked marijuana in the vehicle that morning before meeting Adams to carpool to work. (Tr. at 31, 41–42.) Both Johnson and Adams denied that the vehicle contained any marijuana or other illegal substances. (Tr. at 31.)

Returning to the passenger side of the vehicle to perform a search, Trooper Caddell could see a glass Ball Mason jar on the floorboard as he looked through the passenger-side window. (Tr. at 31–37.) Caddell later testified that if a person had been sitting in the passenger seat, the jar would have sat directly between his feet. (Tr. at 39.) In his opinion, the jar was in a position such that Adams could have taken possession of it. (Tr. at 39.) Although Caddell was carrying a

2

flashlight, he could see the jar without it. (Tr. at 37.) Because the jar was in plain view and consisted of see-through glass, Caddell could see a "green, leafy plant material" inside it. (Tr. at 31, 39–40.) Testing later revealed that the jar contained about twenty-four grams of marijuana. (Tr. at 36.)

Trooper Caddell also found a large amount of money on both occupants (Adams had more than Johnson—a little over $2100). Caddell thought the amount of money was large enough to indicate the possible sale of marijuana. (Tr. at 36.)

At trial, Adams testified that he did not smell marijuana when he got into the vehicle, as Johnson was smoking a cigar at the time, nor did the two of them discuss Johnson smoking marijuana earlier that morning. (Tr. at 47–48.) Johnson testified that to his knowledge, Adams did not know about the marijuana in the vehicle. (Tr. at 43.)

Adams further testified that he did not notice the jar when he got into Johnson's vehicle or at any other time before Trooper Caddell stopped the vehicle. (Tr. at 47.) Both Adams and Johnson testified that Adams got into the front seat with his backpack, and according to Johnson, the jar was underneath the seat. (Tr. at 43, 47.) As a rebuttal witness, however, Trooper Caddell testified that he could see a backpack in the back seat, but that the jar was on the floorboard in the front well, out from underneath the seat. (Tr. at 50.)

Acknowledging having placed his hand between the seat and the door when Trooper Caddell approached the passenger-side window, Adams testified that he was reaching down to get his identification after dropping it in between the seat and the door. He had dropped it after retrieving it from his backpack, anticipating the Trooper would ask for it. In contrast, Trooper Caddell testified that Adams did not produce his license from between the seat and the door, but rather handed over his license with his other hand.

Johnson, who had signed a pretrial diversionary agreement admitting to possessing marijuana, further testified that he told Trooper Caddell that the marijuana belonged to him, not Adams. (Tr. at 42, 45.)

The trial court found Adams guilty of possessing marijuana. At the sentencing hearing, the court imposed the State's recommended sentence of 365 days in jail, with two days' credit for time served and the remainder suspended to probation. In addition to imposing fines and administrative fees of $464, Judge Bardach suspended Adams's driver's license and registration for 180 days under Indiana Code § 35-48-4-15(a) (2008), believing that the driver's license suspension statute left her no discretion in the matter even though Adams was not driving the vehicle. (Tr. at 55, 64–65.)

Adams appealed, arguing that the evidence was insufficient to support his conviction and that the trial court erred by suspending his license and registration because he was not using the vehicle. (Appellant's Br. at 6, 8–9, 12.) The Court of Appeals affirmed. Adams v. State, 946 N.E.2d 630 (2011).

We granted transfer, vacating the opinion of the Court of Appeals. Adams v. State, ___ N.E.2d ___ (2011) (table). The Court of Appeals correctly rejected Adams's sufficiency claim, and we summarily affirm their disposition of that issue. Ind. Appellate Rule 58(A). We therefore turn to his claim under the driver's license suspension statute.

**Standard of Review**

Our statutes typically afford a trial court some discretion in setting the length of a prison term or the amount of a fine. See, e.g., Ind. Code §§ 35-50-3-2 to -4 (2008) (class A, B, and C misdemeanors); see also Ind. Code §§ 35-50-2-4 to -7 (2008) (class A, B, C, and D felonies). In general, we review a challenge to a trial court's sentence for an abuse of discretion in setting that length or amount. Anglemyer v. State, 868 N.E.2d 482 (Ind. 2007), clarified on reh'g, 875

4

N.E.2d 218 (Ind. 2007). An abuse of discretion occurs when the decision clearly contravenes the logic and effect of the facts and circumstances before the court. Id.

But to the extent that a statute leaves the court no discretion in deciding whether to impose a sanction once the court finds certain facts to be true, describing our standard of review as a search for an abuse of discretion would seem like a misnomer. Instead, as always, we review for clear error the court's findings of facts that trigger the statute, and we review de novo any questions of law in the court's application of the statute. Ind. Trial Rule 52(A); see also Johnson v. Johnson, 920 N.E.2d 253 (Ind. 2010). Because a question of statutory interpretation constitutes a question of law, we review it de novo. Sloan v. State, 947 N.E.2d 917 (Ind. 2011).

## Using a Motor Vehicle Under the Driver's License Suspension Statute

A person commits possession of marijuana as a class A misdemeanor if he knowingly or intentionally possesses marijuana. Ind. Code § 35-48-4-11 (2008). When a defendant is convicted of possessing marijuana, the court must order the person's driver's license, existing motor vehicle registration, and ability to register new vehicles suspended for no less than six months and no more than two years if the court "finds that a motor vehicle was used in the commission of the offense." Ind. Code § 35-48-4-15(a). The statute leaves the court discretion to decide the length of the suspension, but not whether to order it.

Adams argues that the trial court abused its discretion in suspending his driver's license and registration because Adams was not using a motor vehicle in committing his offense. (Appellant's Br. at 8–9, 12.) Instead, says Adams, he was merely riding in a vehicle owned and driven by Johnson. (Appellant's Br. at 8–9, 12.) We understand this as a claim that the court erred as a matter of law in applying the statute to Adams at all.

In response, the State argues that finding any use of a vehicle, whether by a defendant or by some other party, requires the court to suspend the defendant's driver's license and

5

registration. (Appellee's Br. at 10) ("It does not matter who uses the vehicle, it [sic] just needs to be used.").

Adams relies on the legislative history of Section 35-48-4-15(a) to discredit the notion that the Legislature intended subsection 15(a) to reach people in his situation. (Appellant's Br. at 9–11.) Originally, the statute required a finding that "the offense is committed in a motor vehicle or a motor vehicle is used to facilitate the commission of the offense" and left a trial court the discretion to suspend a defendant's license and registration. Ind. Code § 35-48-4-15(a) (Supp. 1990); see also Act of March 19, 1990, P.L. 67-1990, § 13, 1990 Ind. Acts 1555, 1571–72.

But in 1991, the Legislature removed the requirement that some nexus connect a motor vehicle to the offense, and made the suspension mandatory simply upon conviction for the underlying drug offense. Ind. Code § 35-48-4-15(a) (Supp. 1991); see also Act of May 5, 1991, P.L. 107-1991, § 3, 1991 Ind. Acts 1976, 1982. Finally, in 2004, the Legislature inserted the current requirement that a motor vehicle be "used in the commission of the offense." Ind. Code § 35-48-4-15(a) (2008); see also Act of March 17, 2004, P.L. 76-2004, § 23, 2004 Ind. Acts 1070, 1085–86.

Adams therefore argues that the Legislature intended the 2004 amendment to abrogate cases decided under the 1991 text and in which no nexus whatsoever connected a motor vehicle with the offense. See, e.g., Mitchell v. State, 659 N.E.2d 112, 114, 116 (Ind. 1995) (affirming suspension when parties stipulated no motor vehicle involved); see also Walker v. State, 661 N.E.2d 869, 870, 872 (Ind. Ct. App. 1996) (affirming suspension when officers found marijuana in defendant's pocket after arrest for barroom brawl). As a result, whereas the State argues that anyone's use of a motor vehicle in the commission of the offense should require suspending a defendant's driver's license and registration, Adams argues that only the defendant's use of a motor vehicle "to contribute to the conduct of [the] crime" should require that result. (Appellant's Br. at 11.) From that point, Adams seems to conclude that the defendant must therefore either have owned or have been driving the motor vehicle for Section 35-48-4-15(a) to apply. (Appellant's Br. at 11–12.)

We think the State's argument goes much too far in imposing criminal liability, and Adams's not quite far enough.

Our primary goal in interpreting statutes is to determine and give effect to the Legislature's intent. State v. Oddi-Smith, 878 N.E.2d 1245 (Ind. 2008). The best evidence of that intent is a statute's text. Id. The first step is therefore to decide whether the Legislature has spoken clearly and unambiguously on the point in question. Sloan, 947 N.E.2d at 922. When a statute is clear and unambiguous, we must apply the plain and ordinary meaning of the language. Id. There is no need to resort to any other rules of statutory construction. Id. As a result, we need not delve into legislative history if no ambiguity exists. See id.

But a statute is ambiguous when it admits of more than one reasonable interpretation. Elmer Buchta Trucking, Inc. v. Stanley, 744 N.E.2d 939 (Ind. 2001). In that case, we resort to the rules of statutory construction so as to give effect to the Legislature's intent. Id. For example, we read the statute as a whole, avoiding excessive reliance on a strict, literal meaning or the selective reading of individual words. Oddi-Smith, 878 N.E.2d at 1248. In a criminal case, we construe an ambiguous statute in favor of the defendant. State v. Turner, 567 N.E.2d 783 (Ind. 1991) (applying rule of lenity).

Although both parties assert that Section 35-48-4-15(a) is clear on its face, (Appellant's Br. at 11; Appellee's Br. at 9), the use of "is used" in the passive voice naturally leaves open the question of who must use the vehicle for the statute to apply. No surprise, Adams interprets the phrase narrowly to include use only by the defendant, and the State interprets it broadly to include use by anyone.

Reading the statute as a whole instead of reading the terms and phrases in isolation counsels in favor of Adams's interpretation. Indeed, Section 35-48-4-15(a) states that a trial court must suspend the defendant's driver's license and registration whenever it finds "that a motor vehicle is used in the commission of the offense." It is axiomatic that criminal liability attaches only to conduct, so we think the use of a motor vehicle must occur in the course of the

conduct that gives rise to the defendant's criminal liability in the first place. Accomplice liability aside, that will generally occur only when the defendant uses the motor vehicle. We therefore conclude that Section 35-48-4-15(a) requires proof that the defendant used a motor vehicle, at least in cases in which the defendant's liability does not turn on an accomplice theory. The rule of lenity only strengthens this conclusion.

But even though we agree with Adams that the driver's license suspension statute generally applies only when the <u>defendant</u> uses a vehicle in the commission of the offense, it does not follow that the defendant must therefore either own or be driving the vehicle when he commits the offense. Indeed, the question of whether someone "uses" some object will always raise the question of <u>how</u> one can "use" it. <u>Compare</u> <u>Watson v. United States</u>, 552 U.S. 74 (2007) (defendant who trades controlled substances for firearm <u>does not</u> "use" firearm within meaning of statute), <u>with</u> <u>Smith v. United States</u>, 508 U.S. 223 (1993) (defendant who trades firearm for controlled substances <u>does</u> "use" firearm within meaning of statute). Still, we are confident that thornier textual problems exist. <u>See, e.g.,</u> <u>In re Erickson</u>, 815 F.2d 1090 (7th Cir. 1987) (grappling with whether modern, mechanized haybine constituted "mower" for purposes of exemption statute drafted in 1935).

Noah Webster's successors tell us that "to use" means, among other things, "to put into action or service; avail oneself of; employ," and "to carry out a purpose or action by means of; utilize." <u>Merriam-Webster's Collegiate Dictionary</u> 1378 (11th ed. 2004). Along these lines, Adams's counsel advances the rule that a defendant must therefore employ or utilize a motor vehicle so as to contribute to the conduct that constitutes his offense. But, as Adams's counsel acknowledged at oral argument, a defendant could just as easily use the vehicle by hiding controlled substances in its glove box or trunk as by driving it and transporting controlled substances in the process. Or the defendant could use the vehicle by selling those substances out the window. Or the defendant could use the vehicle by selling those substances to a buyer inside the vehicle so as to conceal the transaction from prying eyes. In all these situations, the defendant would be employing or utilizing a motor vehicle for the purpose of engaging in

8

conduct that constituted an offense involving controlled substances without actually driving or even necessarily owning the vehicle.

At oral argument, counsel for the State went further and asserted that a once a defendant enters a vehicle, his mere possession of marijuana somewhere on his person triggers the statute because he was using the vehicle while possessing marijuana. We caution that a showing that the defendant used a vehicle in committing the offense is a necessary precondition for suspending his driver's license under the statute, not merely a perfunctory box to check as a matter of course after convicting the defendant of possession.

Indeed, it is in evaluating this particular argument of the State's that we find reference to the civil forfeiture statute most helpful. The civil forfeiture statute allows the State to seize a motor vehicle if is "used or . . . intended for use by the person . . . in possession of [it] to transport or in any manner to facilitate the transportation of . . . [a] controlled substance for the purpose of committing, attempting to commit, or conspiring to commit" any number of different offenses. Ind. Code § 34-24-1-1 (2008).

We recently held that showing merely an incidental or fortuitous connection between a vehicle and an underlying offense was not a sufficient showing of use for the State to seize a vehicle under the civil forfeiture statute. See, e.g., Serrano v. State, 946 N.E.2d 1139, 1143–44 (Ind. 2011). In Serrano, the State sought forfeiture of a person's truck based on a slight presence of cocaine residue on the truck's carpet. Id. at 1140–41. We reversed the trial court's judgment in favor of the State. Id. at 1141, 1143–44. In our view, the statute required that the person in possession used the vehicle to transport an illicit substance or item listed in the statute, and that he did so for the purpose of committing, attempting to commit, or conspiring to commit possession of that substance. Id. at 1143 (quoting Katner v. State, 655 N.E.2d 345, 349 (Ind. 1995)). The second requirement served to avoid forfeiture when the operator coincidentally possessed drug residue but was not transporting the residue or using the vehicle in any other way to further possession or conspiracy to possess. Id. (quoting Katner, 655 N.E.2d at 349)).

So we think it is with the driver's license suspension statute. The State must demonstrate that a defendant made more than an incidental use of a motor vehicle in committing his offense, but once the State makes this showing, then a trial court must order the defendant's driver's license, registration, and ability to register other vehicles suspended. The court may exercise its discretion only in setting the length of that suspension.

Here, under the very rule Adams proposes, Adams used the vehicle in committing the offense of possessing marijuana. When viewed in the light most favorable to the judgment, the evidence shows that Adams possessed a jar of marijuana by keeping the jar on the floorboard in front of him while he sat in the passenger seat. As a result, this is not a situation in which a defendant merely happened to possess a small bag of marijuana in his pocket without making any direct use of the vehicle to do so. Indeed, the trial court could well have found that Adams used the floorboard of the front well to possess the jar so Trooper Caddell would not catch him holding it in his hands when Trooper Caddell came to the window.

As a result, we think the court properly ordered Adams's driver's license, registration, and ability to register other vehicles suspended, as the statute left the court no discretion in the matter.

## Conclusion

We therefore affirm the trial court.

Dickson, Sullivan, Rucker, and David, JJ., concur.