

**FILED**

Oct 11 2018, 8:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Libby Yin Goodknight
Krieg DeVault LLP
Indianapolis, Indiana

Shannon L. Noder
Krieg DeVault LLP
Merrillville, Indiana

G. Michael Schopmeyer
Michael E. DiRienzo
Kahn, Dees, Donovan & Kahn, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

David M. Austgen
Michael J. Jasaitis
Michael L. Muenich
Ryan A. Deutmeyer
Austgen Kuiper Jasaitis P.C.
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Joseph Guzzo, Robert Glenn Guzzo, and Betty Jo Keller,

*Appellants-Defendants,*

*v.*

Town of St. John, Lake County, Indiana,

*Appellee-Plaintiff.*

October 11, 2018

Court of Appeals Case No.
45A05-1711-PL-2736

Appeal from the Lake Superior Court

The Honorable Diane Kavadias Schneider, Judge

Trial Court Cause No.
45D11-1403-PL-37

**Bradford, Judge.**

# Case Summary[1]

[1] David Joseph Guzzo, Robert Glenn Guzzo, and Betty Jo Keller ("the Guzzos") appeal from the trial court's entry of summary judgment in favor of the Town of St. John, Lake County ("the Town"), in its eminent domain action against land once owned by the Guzzos ("the Property"). The Guzzos challenge the trial court's conclusion that they are only entitled to receive 100% of the fair market value of the Property. The Guzzos claim that the Property was either a "parcel of real property occupied by the owner as a residence," which would entitle them to receive 150% of its fair market value, or "agricultural land," which would entitle them to 125% of its fair market value. Because we disagree with both contentions, we affirm.

# Facts and Procedural History

[2] From approximately 1966 until he passed away in 1990, James Robert Guzzo was the owner of the Property, consisting of two parcels of land (the "North Parcel" and the "South Parcel") located in St. John, Indiana, along U.S. 41. Altogether, the Property consisted of approximately 8.65 acres of wooded, untillable land upon which was a house and a barn, among other improvements. The North Parcel was located in a "C-2" highway commercial zoning district while the South Parcel was located in an "I" light industrial

---

[1] We heard oral argument in this case on October 2, 2018, in the Court of Appeals Courtroom in Indianapolis, Indiana. We commend counsel for the high quality of their presentations.

zoning district. Due to the age of the Property and the fact that the house predated the current Town zoning ordinance, the Property was treated as a legal non-conforming use. Pursuant to the zoning ordinance, a non-conforming use ceases six months after the Property is abandoned, a "crops only" agricultural use is permitted in a I zoning district, and commercial greenhouses and/or nurseries are permitted in C-2 zoning district. Other than these types of agricultural uses, none of which actually occurred, the Property could not be used for agriculture pursuant to the zoning ordinance.

[3]    Upon James's death, the Property was transferred to the Guzzos, subject to a life estate reserved for Rosemary Rokosz-Guzzo. In September of 2009, Rosemary vacated the Property, and on December 18, 2009, she quitclaimed her life-estate interest to the Guzzos. After Rosemary vacated the Property, neither any of the Guzzos nor any other person resided on the Property. Northern Indiana Public Service Company terminated the gas and electric service, also in December of 2009, and removed the utility meters the next year. Gas and electric services to the Property were never restored.

[4]    When the Guzzos owned the Property, no agricultural crops were grown or harvested nor were any agricultural animals, birds, or other creatures grown, raised, husbanded, or otherwise maintained on it. Moreover, the Guzzos have never offered any evidence to suggest that they had any agriculturally-related plan for the Property. The Guzzos have produced no federal, local, or state tax returns that show that any income was received as a consequence of the

conduct of agricultural activities on the Property, and the Property was never assessed as "agricultural" during their ownership.

[5] Sometime, apparently in 2013, the Town engaged appraisers to value the Property. At the time the appraisals were completed, it was noted that the residence had been vacant for at least a year. On or about December 30, 2013, the Town entered into an agreement with a developer which involved the proposed development of the Property along with additional public improvements related to U.S. 41. On February 3, 2014, the Town issued a "Uniform Property Acquisition Offer" to each of the Guzzos, in compliance with applicable law, seeking to purchase the Property for a "Roadway Improvement and Economic Development Project." Appellants' App. II pp. 189, 192, 195, 198, 201, 204. On March 18, 2014, the Guzzos rejected the Town's offer.

[6] On March 28, 2014, the Town instituted condemnation proceedings. On July 31, 2014, the trial court approved and entered an agreed order of appropriation of real estate and appointment of appraisers, pursuant to which the Property was appropriated by the Town and was to be appraised by three court-appointed appraisers. The Property was formally transferred to the Town on October 24, 2014, when the Town deposited the appraisal amount of $745,000.00 with the trial court.

[7] On September 7, 2016, the Guzzos filed a motion for partial summary judgment, designation of materials in support, and brief in support on the

matter of enhanced compensation pursuant to Indiana Code section 32-24-4.5-8.  The Guzzos argued that the Town should compensate them 150% of fair market value for their property because it was "a parcel of real property occupied by the owner as a residence."  *See* Ind. Code § 32-24-4.5-8(2).  Alternatively, the Guzzos maintained that the Town should compensate them 125% of fair market value for their property because the Property qualified as "agricultural land."  *See* Ind. Code § 32-24-4.5-8(1).  On February 23, 2017, the Town filed its response to the Guzzos' motion for partial summary judgment and cross-moved for partial summary judgment, responding to the issue of enhanced compensation and requesting a declaratory judgment on the legality of the Town's taking of the Property.

[8]  On November 8, 2017, the trial court granted the Town's cross-motion for partial summary judgment as to the legality of its taking of the Property.  The trial court also concluded that the Property did not qualify as residential property under Indiana Code section 32-24-4.5-8(2) because it was not being occupied by the owner as a residence at the time of the taking.  The trial court further concluded that the Property did not qualify as agricultural land under Indiana Code section 32-24-4.5-8(1) "because it was never used for agricultural purposes."  Appellants' App. Vol. II p. 34.  On November 20, 2017, the trial court amended its order to direct the entry of final judgment in favor of the Town.

# Discussion and Decision

[9] The Guzzos appeal from the entry of summary judgment in favor of the Town as to the amount of compensation they are entitled to receive for the Property. On review of a trial court's decision to grant or deny summary judgment, we must determine whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind. 1999). A fact is "material" if its resolution would affect the outcome of the case and "genuine" if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting Ind. T.R. 56(C)).

> In reviewing the propriety of a ruling on a motion for summary judgment, we apply the same standards as the trial court and review all the pleadings, depositions, admissions, answers to interrogatories, and any affidavits designated to the trial court in the light most favorable to the nonmovant. The movant bears the burden of proving the propriety of summary judgment, and all rational assertions of fact and reasonable inferences to be resolved therefrom are deemed to be true and are viewed in the nonmovant's favor.

*Lindsey v. DeGroot*, 898 N.E.2d 1251, 1256 (Ind. Ct. App. 2009) (citation omitted).

[10] The Guzzos limit their challenge[2] to the trial court's conclusion that they are not entitled to enhanced compensation pursuant to Indiana Code section 32-24-4.5-8, which provides, in part, as follows:

> a condemnor that acquires a parcel of real property through the exercise of eminent domain under this chapter shall compensate the owner of the parcel as follows:
>
> (1) For agricultural land:
>
> [...]
>
> (i) payment to the owner equal to one hundred twenty-five percent (125%) of the fair market value of the parcel as determined under IC 32-24-1; or [....]
>
> (2) For a parcel of real property occupied by the owner as a residence:
>
> (A) payment to the owner equal to one hundred fifty percent (150%) of the fair market value of the parcel as determined under IC 32-24-1[...]
>
> (3) For a parcel of real property not described in subdivision (1) or (2):
>
> (A) payment to the owner equal to one hundred percent (100%) of the fair market value of the parcel as determined under IC 32-24-1[.]

[11] The trial court concluded that the Property was neither "a parcel of real property occupied by the owner as a residence" nor "agricultural land" and so ruled that the Guzzos were only entitled to 100% of the assessed fair market

---

[2] Although the Town contends that the Guzzos continue to challenge the actual taking, they specifically disclaim such a challenge: "The Guzzo Family does not challenge the underlying legality of the Town's taking of their property." Appellants' Br. pp. 7–8.

value. The Guzzos challenge both of those conclusions. Ultimately, the questions are ones of statutory interpretation.

> When interpreting a statute, our primary goal is to fulfill the legislature's intent. *Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012). And the "best evidence" of that intent is the statute's language. *Id.* If that language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it "does say" and what it "does not say." *State v. Dugan*, 793 N.E.2d 1034, 1036 (Ind. 2003).

*Day v. State*, 57 N.E.3d 809, 812 (Ind. 2016).

[12] An issue of statutory construction presents a question of law which is reviewed *de novo* on appeal. *Chrysler Group, LLC v. Review Bd. of the Ind. Dep't. of Workforce Dev.*, 960 N.E.2d 118, 124 (Ind. 2012). Pursuant to this standard of review, this court owes no deference to the trial court's statutory interpretation. *Morgan Cty. v. Ferguson*, 712 N.E.2d 1038, 1043 (Ind. Ct. App. 1999). As an initial matter, it seems clear that the legislative intent of Indiana Code section 32-24-4.5-8 is to protect the property rights of certain Hoosiers by erecting an additional obstacle, in the form of enhanced compensation, to the taking of land that falls into certain categories. Whether the Property fell into one of those categories is the question we must answer.

## I. Whether the Property Qualified as "Real Property Occupied by the Owner as a Residence"

[13] While acknowledging that the last resident of the Property moved out in 2009, the Guzzos nonetheless contend that the Property qualifies as "a parcel of real

property occupied by the owner as a residence" pursuant to Indiana Code section 32-24-4.5-8(2). The Guzzos argue that (1) they "occupied" the Property by mowing it, performing repairs, etc.; (2) interpreting the subsection to require occupancy at the time of the taking is to graft a temporal requirement onto the statute that it does not include; and (3) requiring actual occupancy at the time of the taking could potentially lead to unfair results.

[14] The first of the Guzzos' arguments is without merit. Even if one assumes that the Guzzos were not already required by law to at least mow the Property and keep the house in repair, mowing and repair to an unoccupied house does not equal occupancy. It is undisputed that no owner had actually lived in the house for several years as of the taking, and there is no indication that the absence was ever intended to be anything other than permanent, as it is also undisputed that none of the Guzzos had any intention of ever living on the Property. Indeed, the utilities were shut off and the meters removed several years before the taking. While we will not attempt to formulate a general rule as to what constitutes occupancy, we can say that the facts of this case fall short.

[15] As for the Guzzos' second argument, we conclude that the only reasonable interpretation of the occupancy requirement is that it is satisfied only when the parcel is actually being occupied by an owner as a residence at the time of the taking. The adjective "occupied," even when not preceded by "is" or "being," is generally understood to refer to an occupation that is occurring at a certain point in time, not an occupation that occurred prior to that time but has since ceased. In cases such as this, that certain point in time is when the

governmental unit actually takes the land. We conclude that this is the only interpretation that is consistent with the clear legislative intent. To the extent that the General Assembly wants to make it more difficult for a governmental unit to take someone's home, that is not what happens when it takes property containing a house that has been vacant for many years, as was the case here. If we were to accept the Guzzos' proposed interpretation—essentially that the Property qualifies if any owner ever resided on it—then very little land in the State of Indiana would *fail* to qualify for 150% compensation. This would have the effect of rendering the other two compensation categories in Indiana Code section 32-24-4.5-8 largely superfluous, and it is well-settled that "[w]e must not interpret one provision of a statute so as to render other provisions of the same meaningless." *Kaser v. Barker*, 811 N.E.2d 930, 932 (Ind. Ct. App. 2004), *trans. denied*.

[16] Finally, the Guzzos mention a number of circumstances under which a governmental unit could allegedly unfairly avoid paying enhanced compensation. Examples include the taking of homes put on the market by deceased or relocated owners, summer homes, lake homes, or homes left vacant when the owners are temporarily in nursing homes. While these hypotheticals may be thought-provoking, the Guzzos do not suggest that any of this has occurred in this case. We decline the Guzzos' invitation to address these hypotheticals because they are not before us. The trial court correctly concluded that the Property did not qualify as land occupied by an owner as a residence.

## II.  Whether the Property Qualified as "Agricultural Land"

[17]   In the alternative, the Guzzos contend that the Property was "agricultural land" pursuant to Indiana Code section 32-24-4.5-8(1).  There is no dispute that the Property was not being used for any actual agriculture at the time of the taking and had not been for at least several years.  The Guzzos argue that the statute does not refer to the use of the land but, rather, its character.  While this is true, it does not get the Guzzos where they need to go, because it is a parcel's use for agriculture that gives it "agricultural" character.  "Agriculture" is an activity, as opposed to some inherent characteristic such as soil type or location, which may be defined as "[t]he science or art of cultivating soil, harvesting crops, and raising livestock." BLACK'S LAW DICTIONARY 83 (10th ed. 2014).  Because there was no agriculture occurring on the Property at the time of the taking, it was not "agricultural land" pursuant to Indiana Code section 32-24-4.5-8(1).  While the General Assembly could have included explicit language that required the land at issue be in current agricultural use to qualify for enhanced compensation, we conclude that this was not necessary.  While we decline to formulate a general rule as to what constitutes "agriculture," the facts of this case fall short.

[18]   As with the Guzzos' other argument, we conclude that our interpretation is the only one that is consistent with the clear legislative intent.  To the extent that the General Assembly wants to make it more difficult for a governmental unit to take someone's farm, that is not what happened here.  If we were to accept

the Guzzos' proposed interpretation, nearly all land in the state would be entitled to enhanced compensation as "agricultural land" pursuant to Indiana Code subsection 32-24-4.5-8(1), rendering subsection -8(3) (which describes land entitled to 100% compensation) largely superfluous. As previously mentioned, "[w]e must not interpret one provision of a statute so as to render other provisions of the same meaningless." *Kaser*, 811 N.E.2d 932. The trial court correctly concluded that the Property did not qualify as agricultural land.

[19] The judgment of the trial court is affirmed.

Baker, J., and Kirsch, J., concur.