


FILED

Oct 30 2025, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

Indiana Department of Education,

*Appellant-Respondent*

v.

Mt. Zion's Loving Day Care Ministry, Lambert Gates, Sheryl Jennings, and Patti Jones,

*Appellees-Petitioners*

---

October 30, 2025

Court of Appeals Case No.
25A-PL-291

Appeal from the Hamilton Superior Court

The Honorable David K. Najjar, Judge

Trial Court Cause No.
29D05-2312-PL-11816

---

**Opinion by Judge Bailey**
Judges Tavitas and Kenworthy concur.

**Bailey, Judge.**

## Case Summary

[1] The Indiana Department of Education ("the DOE") appeals the trial court's order reversing the DOE's decision to terminate and disqualify Mt. Zion's Loving Day Care Ministry, Lambert Gates, Patti Jones, and Sheryl Jennings (collectively, "Mt. Zion") from the Child and Adult Care Food Program ("the CACFP") and ordering Mt. Zion's reinstatement in the program. The DOE raises three issues, which we consolidate and restate as the following dispositive issue: whether the termination and disqualification of Mt. Zion from the CACFP was invalid as an abuse of the DOE's discretion, in excess of its statutory authority, done without observance of procedure required by law, and/or unsupported by substantial evidence. Because we find the DOE's action was valid, we reverse.

## Facts and Procedural History

[2] The CACFP is a federal program created by Congress and overseen by the United States Department of Agriculture ("the USDA") and its Food and Nutrition Service ("FNS") division. *See* 42 U.S.C. §§ 1751-1769j. The program is designed to "provide aid to … day care homes for the provision of nutritious foods that contribute to the wellness, healthy growth, and development of young children …." 42 U.S.C. § 1766(a)(1)(A)(ii). It achieves this purpose by providing participating institutions reimbursements "for their costs in connection with food service operations." 7 C.F.R. § 226.4(a). The USDA has

enacted regulations establishing program requirements, *see* 7 C.F.R. § 226.1 *et seq.*, but the federal government leaves administration of the program to the states, which oversee the participating institutions, provide them with training and assistance, and ensure the federal funds are spent properly. *See* 7 C.F.R. § 226.6(a). Indiana administers the CACFP through the DOE.

[3] Pursuant to the federal regulations governing the CACFP, the DOE must conduct administrative reviews of participating institutions like Mt. Zion at least once every three years. *See* 7 C.F.R. § 226.6(i)(5); 7 C.F.R. § 226.6(m)(6)(i). The DOE must review institutions for "compliance with the [Program] requirements," 7 C.F.R. § 226.6(m)(3), and "shall take appropriate action to correct any irregularities" with an institution's "operation of the Program," 7 C.F.R. § 226.6(n). Institutions are to receive "technical assistance" from the DOE to help correct irregularities. 7 C.F.R. § 226.6(a)(2).

[4] Mt. Zion is a non-profit day care center in Indianapolis that has participated in the CACFP as an institution through agreements with the DOE since 1999, serving four meals a day to infants and children from predominantly impoverished communities suffering from food insecurity. Mt. Zion is managed by Kingdom Apostolic Ministries, which is chaired by Bishop Lambert Gates. Mt. Zion's Director, Patti Jones, is responsible for Mt. Zion's CACFP-related duties, including menu planning, ordering food, and completing reports. Sheryl Jennings is responsible for Mt. Zion's CACFP-related financial management.

The DOE reviews of Mt. Zion's CACFP in 2015 and 2018 resulted in notices of serious deficiencies, followed by Mt. Zion's timely corrective action. In July 2022, the DOE conducted another review of Mt. Zion's CACFP program. On October 12, the DOE sent Mt. Zion a three-page notice that it[1] was "seriously deficient in its operation of the CACFP[,]" and the notice specified each instance of noncompliance. App. v. 8 at 167. The notice informed Mt. Zion that, if it did not "fully and permanently correct all of the serious deficiencies and submit documentation of the corrective action by November 11, 2022," the DOE would propose to terminate Mt. Zion's agreement to participate in the CACFP and disqualify it from future CACFP participation. *Id*. The notice defined "corrective action" and informed Mt. Zion that its "corrective action plan ["CAP"] must be submitted *and fully implemented* by November 11, 2022." *Id*. at 169 (emphasis added).

The notice further stated, in relevant part,

> If [the DOE] receives the documentation of the institution's corrective action by November 11, 2022 and determines that the corrective action plan fully and permanently corrects all of the serious deficiencies, [the DOE] will temporarily defer the determination of serious deficiency. [The DOE] may conduct an unannounced follow-up review to verify the adequacy of the corrective action. *If [the DOE] finds in a follow-up review or any subsequent review that any of these serious deficiencies have not been fully and permanently corrected*, [the DOE] will immediately propose to

---

[1] The notices, requirements, and proposed agency actions referenced in this opinion applied to both Mt. Zion as an institution and to Jones, Jennings, and Gates as the individuals responsible for Mt. Zion's CACFP.

terminate [Mt. Zion's] agreement and propose to disqualify [Mt. Zion] *without any further opportunity for corrective action*.

*Id.* at 170-71 (emphasis added). The notice informed Mt. Zion that federal law prohibited it from appealing the determination of serious deficiencies, but that Mt. Zion could seek administrative review if the DOE later proposed to terminate and disqualify Mt. Zion from the CACFP.

[7] On November 3, Mt. Zion submitted a CAP to the DOE. The DOE acknowledged receipt of the CAP in an e-mail dated November 7 and informed Mt. Zion that the DOE "would communicate with them as soon as [it] had an opportunity to review the CAP and documentation." *Id.* at 237. There was no further contact between the DOE and Mt. Zion until February 20, 2023, at which time the DOE sent Mt. Zion a notice of proposed termination and disqualification from the CACFP. The notice stated that the DOE had received Mt. Zion's CAP and other documentation before the deadline and reviewed it but found that Mt. Zion still had not "fully and permanently corrected the serious deficiencies" the DOE had identified in its October 12, 2022, notice, including deficiencies in Mt. Zion's menu. *Id.* at 179. The notice stated that "[t]he corrective action plan provided was not acceptable," in that it did not include "ways to ensure" that the noncompliance would be "fixed." *Id.* at 181. The notice then gave specific details explaining each noncompliance.

[8] The notice concluded that, since Mt. Zion had not "fully and permanently corrected the serious deficiencies identified" in the notice of deficiency, the

DOE was proposing to terminate and disqualify Mt. Zion from the CACFP. *Id.* at 182. However, the notice continued, in relevant part,

> [the DOE] procedures allow for *one final opportunity for corrective action after the issuance of a proposed termination and disqualification notice. The state agency may only accept corrective action up until a hearing begins* …. Submitting additional corrective action does not prevent the proposed termination and disqualification from moving forward.

*Id.* (emphasis added). The notice informed Mt. Zion of its appeal rights and that, if Mt. Zion appealed, it could "continue to participate in the CACFP … until the hearing official issues a decision." *Id.*

On February 24, Mt. Zion submitted to the DOE an updated CAP. In an e-mail dated March 3, the DOE informed Mt. Zion that it had received and reviewed the updated CAP and "found that the procedures [in the CAP] would correct the serious deficiencies." *Id.* at 150. However, it asked that Mt. Zion submit an updated menu by March 6, and Mt. Zion did so. In an email dated March 7, the DOE informed Mt. Zion that it had received the updated menu but that it still required some work. But because the menu "wasn't a required document for the corrective action (just a supporting document to demonstrate compliance)," the DOE stated that it was "accepting the corrective action and no longer proposing termination/disqualification." *Id.* at 149. The DOE stated that it would continue to work with Mt. Zion on the "final corrections" to the menu. *Id.*

On March 24, the DOE sent Mt. Zion a notice of compliance which stated, in relevant part:

> This letter concerns the determination in the Serious Deficiency Notice dated October 22, 2022.
>
> \*\*\*
>
> While [the DOE] originally received an unacceptable corrective action plan and proposed termination and disqualification, additional corrective action was provided and accepted prior to the appeal deadline.
>
> SERIOUS DEFICIENCY DETERMINATION TEMPORARILY DEFERRED
>
> Based on the review of the documentation, [the DOE] has determined that [Mt. Zion] has fully and permanently corrected the serious deficiencies that were cited in the Serious Deficiency Notice. As a result, the serious deficiency determination has been temporarily deferred as of the date of this letter. This also means that [the DOE] will not propose to terminate [Mt. Zion's] agreement based on this serious deficiency finding and disqualify [Mt. Zion] on that basis.

*Id*. at 161 (emphasis in original). The notice concluded:

> [the DOE] has temporarily deferred the serious deficiency determination. *However, if, in any subsequent review, any of these serious deficiencies have not been fully and permanently corrected, [the DOE] will immediately propose to terminate [Mt. Zion's] agreement and propose to disqualify [Mt. Zion] without any further opportunity for corrective action.*

*Id*. at 162 (emphasis added).

[11] On May 19, 2023, the DOE conducted a follow-up review of Mt. Zion's CACFP and found that the serious deficiencies identified on October 12, 2022, had recurred. In a notice dated August 9, the DOE informed Mt. Zion of the continued serious deficiencies, described each instance of noncompliance, and proposed termination of the agreement and disqualification from the program "[e]ffective 15 days from the date [Mt. Zion] receive[d]" the notice. App. v. 7 at 16. The notice informed Mt. Zion of its administrative appeal rights and that, "[i]f appealed, the proposed actions will not take effect until the hearing official issues a decision." *Id*. at 19. It further noted that, if Mt. Zion appealed, it could continue to participate in the CACFP until the appeal decision was issued.

[12] Mt. Zion hired attorneys and a CACFP "[s]pecialist" to help it correct the continuing serious deficiencies. App. v. 8 at 240. On August 24, Mt. Zion filed a request for administrative review of the DOE's August 9 decision, and an evidentiary hearing on the request was conducted before an Administrative Law Judge ("ALJ") on October 2 and November 3. On November 16, the ALJ issued the Final Administrative Decision upholding the DOE's termination and disqualification of Mt. Zion. The ALJ noted that Mt. Zion had taken additional corrective action while its administrative appeal was pending, but found that the DOE could, but was "not required to[,]" accept the additional corrective action. *Id*. at 241. The ALJ further found that "Mt. Zion had not presented a CAP with supporting documentation to [the] DOE that demonstrated Mt. Zion

had fully and permanently correct[ed] the serious deficiency" and cited the DOE employees' testimonies in support. *Id.*

[13] On December 15, Mt. Zion filed a timely petition for judicial review of the final administrative decision. Following briefing and a November 14, 2024, hearing, the trial court granted the petition. In its January 7, 2025, order, the trial court found that the DOE's termination and disqualification of Mt. Zion was an abuse of its discretion because the DOE "secretly imposed an arbitrary unwritten policy banning the federally mandated regulation providing for corrective action opportunities through the conclusion of the administrative hearing." App. v. 9 at 182. The court concluded that the DOE's "secret" policy was arbitrary and capricious and in excess of statutory authority. *Id.* at 183-84. The trial court found that the DOE "never disputed" possessing and employing this secret policy. *Id.* at 183. Having found these grounds "dispositive," the trial court concluded that "the overwhelming evidence supports a finding that Mt. Zion was willing and capable of correcting any remaining noted deficiencies or had materially done so" and that the "legal standard put forth by the federal regulations to measure if a [Program] should be terminated is whether the participant is 'unwilling or incapable of correcting a serious problem.'" *Id.* at 185.

[14] The trial court vacated the final administrative decision and ordered the DOE to reinstate Mt. Zion in the CACFP. In addition, the court ordered the DOE "to provide technical assistance and consider corrective action to address any potential remaining items of deficiency and in the future[,] consistent with

applicable federal and Indiana laws and regulations." *Id*. at 188. This appeal ensued.

## Discussion and Decision

### Standard of Review

In an appeal of a decision by an administrative agency, the standard of review is governed by the Administrative Orders and Procedures Act ("AOPA") (Ind. Code §§ 4-21.5-1-1 to 4-21.5-7-9), and an appellate court is bound by the same standard of review as the trial court. *See, e.g.*, *Walker v. State Bd. of Dentistry*, 5 N.E.3d 445, 448 (Ind. Ct. App. 2014), *trans. denied*. That is,

> [w]e do not try the case de novo and do not substitute our judgment for that of the agency. We will reverse the administrative decision only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Ind. Code § 4-21.5-5-14.
>
> Courts that review administrative determinations are prohibited from reweighing the evidence or judging the credibility of witnesses and must accept the facts as found by the administrative body [if they are supported by the record]…. Although an appellate court grants deference to an administrative agency's [supported] findings of fact, no such deference is accorded to its conclusions of law. The burden of demonstrating the invalidity of the agency action is on the party who asserts the invalidity.

*Id*. at 448-49 (case citations omitted).

## Agency Reviews and Decisions under CACFP

[16] The issue in this case is not whether the DOE was correct when it determined that the serious deficiencies identified in Mt. Zion's program in October 2022 recurred in May 2023; that decision unquestionably is not subject to administrative review. *See* 7 C.F.R. § 226.6(k)(3)(ii). Rather, the issue is whether the DOE's action was valid under AOPA when it terminated Mt. Zion's CACFP agreement and disqualified it from participation on August 9, 2023, based on the recurrence of the deficiencies originally identified in October 2022. Deciding this issue requires that we construe the meaning of the federal CACFP law, which includes both the federal regulations and applicable USDA Handbook.[2] Statutory construction and interpretation are matters of law and we review them de novo. *E.g.*, *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016).

[17] Our rules of statutory construction are well-established and clear.

> When construing a statute our primary goal is to ascertain the legislature's intent. *Adams v. State*, 960 N.E.2d 793, 798 (Ind. 2012). To discern that intent, we look first to the statutory

---

[2] The CACFP regulations provide that, as part of the reviews of participating institutions, state agencies such as the DOE "must assess each institution's compliance with the requirements" of the CACFP law, taking into consideration "[a]ny applicable instructions and handbooks issued by FNS and the [USDA] to clarify or explain [the CACFP]" and "which are not inconsistent with the provisions of [CACFP]." 7 C.F.R. § 226.6(m)(3)(iv). The USDA has issued such a handbook entitled "Serious Deficiency, Suspension, & Appeals for State Agencies & Sponsoring Organizations, A Child and Adult Care Food Program Handbook" ("the Handbook"). App. v. 7 at 171. Thus, we look to the language of both the federal regulations themselves and the USDA's explanation of the regulations as provided in the Handbook, to the extent the latter are consistent with the former.

language itself and give effect to the plain and ordinary meaning of statutory terms. *Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015). "If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." *State v. Evans*, 810 N.E.2d 335, 337 (Ind. 2004) (quotation omitted). However, if a statute admits of more than one interpretation, then it is ambiguous; and we thus resort to rules of statutory interpretation so as to give effect to the legislature's intent. *Adams*, 960 N.E.2d at 798.

*Suggs*, 51 N.E.3d at 1193-94.

**Opportunities for Corrective Action**

[18] The first dispute between the parties regarding the meaning of the CACFP law is how many opportunities for corrective action the DOE must allow Mt. Zion before terminating and discontinuing Mt. Zion's involvement in the program due to serious deficiencies. Mt. Zion contends (and the trial court found) that federal law requires the DOE to allow Mt. Zion to take corrective action "through the conclusion of the administrative hearing." App. v. 9 at 182. The DOE maintains that the law only requires it to provide one opportunity for corrective action but gives it discretion to allow additional opportunities until the beginning of the administrative hearing. Given the plain language of the applicable law, we agree with the DOE.

[19] A plain and ordinary reading of the language used in these regulations discloses that state agencies such as the DOE have certain mandatory obligations. The term "must" is construed as expressing a mandatory action or obligation. *See* Must, Merriam-Webster.com, https://www.merriam-

webster.com/dictionary/must?src=search-dict-box [https://perma.cc/8HM6-TQJL] (defining "must" as "be obliged to"; "be required by law"); *see also, e.g.*, *Romine v. Gagle*, 782 N.E.2d 369, 379-80 (Ind. Ct. App. 2003) (citation modified) ("When the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning. The term 'must' carries with it the same meaning."), *trans. denied*. The use of the permissive word "may," on the other hand, indicates there is no requirement to act, but rather discretion to act. *See Welch v. 1106 Traub Tr.*, 204 N.E.3d 243, 251 (Ind. Ct. App. 2023). In addition, when an indefinite article like "an" precedes a countable noun, it indicates the drafter's intent to signify a "discrete, countable thing." *Niz-Chavez v. Garland*, 593 U.S. 155, 162-63 (2021). More specifically, it evidences the intent to identify a "single" item. *Id.* at 163 (holding that the statutory phrase "'a notice' … suggests the government must issue a single statutorily compliant document").

[20] Applying these rules of statutory construction to the regulations, it is clear that the DOE was *required* to give Mt. Zion *one* opportunity to take corrective action after it notified Mt. Zion of a serious deficiency. When a state agency's review of an institution's CACFP program discloses a violation of the program requirements that is a "serious deficiency," the state agency "*must*" notify the institution of that deficiency and provide "*an* opportunity to take corrective action." 7 C.F.R. § 226.6(c)(3)(iii) (emphases added). A notice of serious deficiency "*must*" also warn the institution that "failure to fully and

permanently correct the serious deficiency(ies) within the allotted time *will* result in the State agency's proposed termination of the institution's agreement and the proposed disqualification of the institution…." 7 C.F.R. § 226.6(c)(3)(iii)(A)(5) (emphases added); *see also* Prototype Letter 1, Notice of Serious Deficiency for Institutions,[3] the Handbook, Part 13, App. v. 8 at 17-20.

[21] If the institution takes corrective action that "fully and permanently correct[s] the serious deficiency(ies) within the allotted time and to the State agency's satisfaction, the State agency must …[n]otify the institution …that the State agency has temporarily defer[red] its serious deficiency determination." 7 C.F.R. § 226.6(c)(3)(iii)(B)(1); *see also* Prototype Letter 2, Notice of Successful Corrective Action and Temporary Deferment of Serious Deficiency for Institutions, the Handbook, Part 13, App. v. 8 at 21-22. However, the notice should also inform the institution that, "if, *in any subsequent review*, any of these serious deficiencies have not been fully and permanently corrected, the State agency *will* immediately propose to terminate [the] institution's agreement and propose to disqualify [the] institution …*without any further opportunity for corrective action*." Prototype Letter 2. App. v. 8 at 22 (emphases added); *see also* 7 C.F.R. § 226.6(c)(3)(iii)(B)(3) (emphasis added) ("If the State agency initially determines that the institution's corrective action is complete, but later determines that the serious deficiency(ies) has recurred, the State agency *must*

---

[3] The prototype letters in the Handbook are example letters that USDA FNS "developed for use in the steps of the CACFP serious deficiency process." App. v. 8 at 14.

move immediately to issue a notice of intent to terminate and disqualify the institution…"). Similarly, if the institution fails to take corrective action that "fully and permanently correct[s] the serious deficiency(ies)" within the allotted time, "the State agency *must* notify the institution[] … that the State agency is proposing to terminate the institution's [CACFP] agreement and to disqualify the institution" from the program. 7 C.F.R. § 226.6(c)(3)(iii)(C) (emphasis added); *see also* Prototype Letter 3, Notice of Proposed Termination and Disqualification of Institutions, the Handbook, Part 13, App. v. 8 at 23-25.

[22] The plain language of the CACFP law also clearly allows, but does not require, an agency to accept additional corrective action up to the date of an appeal hearing. 7 C.F.R. § 226.6(c)(4)(i) provides, in relevant part, that a state agency is "*prohibited* from allowing more than 90 days for corrective action from the date the institution receives the serious deficiency notice." However, "[f]or serious deficiencies requiring the long-term revision of management systems or processes, the State agency *may* permit more than 90 days to complete the corrective action as long as a corrective action plan is submitted to and approved by the State agency within 90 days…." 7 C.F.R. § 226.6(c)(4)(iii). The USDA has explained that the regulations permit, but do not require, the agency to "accept corrective action at any point up until the hearing begins." App. v. 7 at 194; *see also id.* at 199, 239 (stating the same).

[23] In the "Outcomes of the Serious Deficiency Process" portion of the Handbook, the USDA further clarifies that

[the] CACFP regulations allow only two possible outcomes of the serious deficiency process: the correction of the serious deficiency to the State agency's satisfaction within stated timeframes, or the State agency's proposed termination of the agreement and disqualification of the institution…. Program regulations do not allow any other outcome, including "warnings", "probation periods", or the use of "settlement agreements or negotiated settlements" for institutions that have been declared seriously deficient, or that have been issued a notice of proposed termination and disqualification.

The issuance of the proposed termination and disqualification does not mean that the institution should stop working on corrective action. In fact, the State agency *can* accept corrective action at any point *up until the [appeal] hearing begins*. If the institution submits documented evidence which convinces the State agency that the institution has fully and permanently corrected the serious deficiency, the State agency *may* accept the institution's corrective action and temporarily defer the proposed termination. This is not considered a "settlement agreement" because it would be acceptable corrective action. Note, again, that if the institution later fails to maintain this corrective action, the State *must* immediately re-issue its notice of proposed termination and disqualification….

However, corrective action may not be submitted to the hearing official once the hearing begins.

App. v. 7 at 194 (emphases added).

[24] In summary, the plain language of the CACFP regulations and the CACFP Handbook provides that the DOE was permitted to allow Mt. Zion further opportunities for corrective action after the first opportunity, but it was not required to do so. The DOE gave Mt. Zion an initial opportunity to correct the

October 2022 serious deficiencies, as required by law, 7 C.F.R. § 226.6(c)(3)(iii), and, when Mt. Zion failed to timely comply, the DOE lawfully exercised its discretion to allow Mt. Zion one additional opportunity for corrective action before the date of an appeal hearing, App. v. 7 at 194, 199, 239. When Mt. Zion eventually successfully corrected the deficiencies, the DOE notified Mt. Zion that it would have no further opportunities to take corrective action if the deficiencies identified in October 2022 recurred.[4] When those deficiencies did recur in May 2023, the DOE lawfully moved to terminate and disqualify Mt. Zion from the program without additional opportunities for corrective action. 7 C.F.R. § 226.6(c)(3)(iii)(B)(3); App. v. 7 at 194. The trial court erred when it ruled that the DOE's refusal to accept further corrective action was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of statutory authority, and unsupported by substantial evidence.

**Standard for Termination**

[25] The second dispute between the parties regarding the meaning of the CACFP law is the standard to be used by the agency to determine that termination and disqualification from the program is appropriate. The DOE points again to the

---

[4] Thus, the DOE's policy regarding additional opportunities for corrective action was not "secret," as Mt. Zion claims and the trial court found. Rather, the DOE informed Mt. Zion in writing that it had a policy of allowing one additional opportunity for corrective action after the issuance of a termination and disqualification notice and that it would allow no further opportunities for corrective action if Mt. Zion initially corrected the deficiencies but a later review showed they had recurred. *See* App. v. 8 at 171 (October 12, 2022, notice); *id*. at 182 (February 20, 2023, notice); *id*. at 161-62 (March 24, 2023, notice).

plain language of the regulations, which provide that an agency "must" move to terminate and disqualify an institution when it does not correct a serious deficiency within the time allotted by the agency. *See* 7 C.F.R. § 226.6(c)(3)(iii)(A)(5) (providing the notice of serious deficiency must warn the institution that "failure to fully and permanently correct the serious deficiency(ies) within the allotted time will result in the State agency's proposed termination of the institution's agreement and the proposed disqualification of the institution…"); 7 C.F.R. § 226.6(c)(3)(iii)(B)(3) (providing the state agency "must move immediately to terminate and disqualify the institution" if the agency "initially determines that the institution's corrective action is complete but later determines that the serious deficiency(ies) has recurred"); 7 C.F.R. § 226.6(c)(3)(iii)(C) (providing the state agency "must notify [the institution] that the State agency is proposing to terminate … and disqualify the institution" if "timely corrective action is not taken to fully and permanently correct the serious deficiencies").

[26] Despite this clear regulatory language, Mt. Zion alleges (and the trial court found) that, even if the institution does not timely, fully, and permanently correct a serious deficiency, "federal regulations" prohibit the DOE from moving to terminate and disqualify Mt. Zion unless the DOE finds that Mt. Zion is "unwilling or incapable of correcting a serious problem." App. v. 9 at 173. As an initial matter, we note that—contrary to the trial court's finding— the federal regulations themselves do not contain the language "unwilling or incapable of correcting a serious deficiency." *Id*. Rather, the Handbook contains

the following statement in its overview of the serious deficiency process: "If institutions are unwilling or incapable of correcting serious problems, the serious deficiency process protects Program integrity by removing the institution from the Program…." App. v. 7 at 180; *see also id.* at 233-34 (noting that an institution that has been declared seriously deficient and demonstrates that it is "unwilling or unable to take appropriate corrective action" must be notified that the agency proposes to terminate it from the program). However, in describing the steps of the serious deficiency process, the Handbook clarifies that, "[i]f the institution fails to implement timely corrective action to fully and permanently correct the serious deficiencies cited, the State agency *must* notify the institution … that the State agency is proposing to terminate the institution's agreement and to disqualify the institution …). *Id*. at 191 (emphasis added); *see also id*. at 180.

[27]     Thus, the Handbook—like the regulations—provides that a state agency *must* move to terminate an institution from the program if the institution has not completed full and permanent corrective action by the relevant deadline. It provides further "guidance" about what a failure to correct a serious deficiency may look like—i.e., an "unwillingness or inability" to take corrective action— but it does not change the legal standard for termination. *See* App. v. 5 at 135 (testimony of the DOE employee that the "unwilling or incapable of correct[ive]" action language is a "general kind of guidance" regarding termination of a CACFP program).

[28] The unambiguous, plain language of the applicable CACFP regulations and the Handbook provide a clear standard for when a state agency must move to terminate and disqualify an institution from the program: when the institution fails to implement timely corrective action to fully and permanently correct the serious deficiencies cited. The DOE complied with that clear legal standard when it moved to terminate Mt. Zion from the program on August 9, 2023, after Mt. Zion initially corrected the serious deficiencies noted in October 2022 but subsequently allowed those deficiencies to recur. Thus, the DOE's action was not arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of statutory authority, and/or unsupported by substantial evidence. *See* I.C. § 4-21.5-5-14.

**Technical Assistance**

[29] The final dispute between the parties regarding the meaning of the CACFP law is whether the DOE violated the legal requirement to provide technical assistance to Mt. Zion before moving to terminate it from the program. The regulations provide that

> The State agency must provide technical and supervisory assistance to institutions and facilities to facilitate effective Program operations, monitor progress toward achieving Program goals, and ensure compliance with all requirements of [the law].… The State agency must maintain documentation of supervisory assistance activities, including reviews conducted, corrective actions prescribed, and follow-up efforts.

7 C.F.R. § 226.6(m)(1). Mt. Zion maintains, and the trial court found, that the termination and disqualification of Mt. Zion must be reversed because the DOE failed to provide Mt. Zion with the required technical assistance.

[30] However, the ALJ specifically found as a fact in the final administrative decision that the DOE provided Mt. Zion with technical assistance in October of 2022 and February and March of 2023. Mt. Zion acknowledges the provision of technical assistance in those instances, but contends the DOE was required to provide even more technical assistance. However, Mt. Zion points to no regulation or part of the Handbook that requires a specific amount of, or timing for, the provision of technical assistance, and we find none. In fact, contrary to Mt. Zion's contentions, not only did the DOE have no obligation to negotiate with Mt. Zion's attorneys following the August 2023 notice of termination, but it was specifically prohibited from doing so. *See* App. v. 7 at 194 ("Program regulations do not allow any other outcome, including 'warnings', 'probation periods', or the use of 'settlement agreements or negotiated settlements' for institutions that have been declared seriously deficient, or that have been issued a notice of proposed termination and disqualification.").

[31] Further, we note that the trial court's conclusion that the DOE violated the law by failing to provide technical assistance to Mt. Zion after March of 2023 is based on its erroneous conclusion that the regulations required the DOE to accept additional corrective action after that date. However, as noted above, once the DOE found that the serious deficiencies noted in October 2022 had recurred in May 2023, the DOE was not required to—and did not—accept any

further corrective actions. *See* 7 C.F.R. § 226.6(c)(3)(iii)(B)(3). As no further corrective action was permissible at that point, the provision of technical assistance to Mt. Zion would have been pointless. Therefore, the lack of that assistance did not prejudice Mt. Zion. *See* I.C. § 4-21.5-5-14(d) (providing that a court may grant relief only if it finds the person seeking relief has been prejudiced by the agency action it appeals).[5]

[32] The substantial evidence establishes that the DOE did not violate the CACFP law by failing to provide technical assistance to Mt. Zion.

## Conclusion

[33] The DOE's August 9, 2023, decision to terminate Mt. Zion's CACFP program without further opportunities to take corrective action was not "secret" and was not arbitrary, capricious, an abuse of discretion, in excess of statutory authority, or without observance of procedure required by law. App. v. 9 at 184. And the DOE's action was supported by substantial evidence that the serious deficiencies identified in October 2022 recurred in May 2023.[6] The trial court erred when it ruled otherwise.

---

[5] Mt. Zion also alleges that the DOE violated the law by failing to document the technical assistance it did provide to Mt. Zion. However, again, Mt. Zion points to no harm to it from that alleged lack of documentation.

[6] Because we reverse the trial court's ruling against the DOE, we do not address the propriety of its remedy, as raised by the DOE in the alternative.

Reversed.

Tavitas, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Indiana Attorney General

Evan Matthew Comer
Supervising Deputy Attorney General
Indianapolis, Indiana


ATTORNEYS FOR APPELLEES

Maggie L. Smith
Kristopher N. Kazmierczak
Frost Brown Todd LLP
Indianapolis, Indiana