ATTORNEY FOR APPELLANT
Donald E. James
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES
Gregory F. Zoeller
Attorney General of Indiana

Kathy Bradley
Deputy Attorney General
Indianapolis, Indiana

FILED

Apr 27 2011, 10:37 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 02S03-1104-CV-241

MARTIN SERRANO,

*Appellant (Defendant below),*

v.

STATE OF INDIANA, AND THE
CITY OF FORT WAYNE,

*Appellees (Plaintiffs below).*

Appeal from the Allen Superior Court, No. 02D01-0808-PL-422
The Honorable David J. Avery, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 02A03-0908-CV-362

**April 27, 2011**

**Shepard, Chief Justice.**

Civil forfeiture is a device, a legal fiction, authorizing legal action against inanimate objects for participation in alleged criminal activity, regardless of whether the property owner is proven guilty of a crime—or even charged with a crime. Appellant Martin Serrano lost his truck in a forfeiture action based on the presence of cocaine residue found in the carpet of the vehicle and on a box of $500 in quarters. The Court of Appeals was correct to reverse the forfeiture

because the State failed to prove any substantial connection, any nexus, that the truck bore to commission of a crime.

## Facts and Procedural History

Martin Serrano was the purchasing manager at the El Paraiso grocery store in Fort Wayne. The Fort Wayne Police Department had placed the store under surveillance after receiving an anonymous tip that the store was receiving shipments of drugs from Chicago. (Appellant's App. at 100, 102, 133, 136–37.) On July 10, 2008, officers observed Serrano's 2004 GMC silver pickup "meeting" with a box truck in front of the grocery store. (Tr. at 77.) Officers observed both vehicles depart in opposite directions and meet again behind the store, with the box truck eventually backing up to the loading dock. They did not witness anything being loaded or unloaded from either vehicle.

The police followed the box truck as it left the grocery store and conducted a traffic stop. During this stop, the pickup truck driven by Serrano "went by and started speeding off," eventually "weaving in-and-out of traffic." (Tr. at 79–80.) Officers had run the license plate on Serrano's pickup and determined that the registered owner had an outstanding warrant. (Tr. at 79.) Uniformed officers eventually caught up to Serrano and pulled him over for speeding.

After the officers took Serrano into custody on the outstanding warrant, a canine officer conducted a sniff test of Serrano's truck. (Tr. at 18–19, 80, 122.) The canine alerted, indicating the presence of narcotics. (Tr. at 44–45, 52.) The police towed Serrano's vehicle to a department facility. Meanwhile, Serrano was released after it was confirmed, via fingerprints, that the warrant was for a different Martin Serrano. (Tr. at 7–8.)

The next day, officers obtained a search warrant and searched Serrano's truck, which was still in police possession. They found a box of about $500 in quarters and $51 in cash. (Tr. at 80, 82, 98–99.) The box of quarters was covered in a residue later determined to be cocaine. (Tr. at 83.) There was similar residue in the front carpet and the back carpet of the truck. (Tr. at 83–85.)

When questioned concerning the drug residue about a month later Serrano admitted that he sometimes "makes" drugs, which he later clarified to mean that he uses drugs. He also said he was the only person who drives the truck  (Tr. at 87–90.)

On August 20, 2008, the State filed a complaint for forfeiture, citing the cocaine residue. (Appellant's App. at 305–06.)  The complaint sought forfeiture of Serrano's truck and the $551 recovered from the vehicle.  On two occasions during September, investigators conducted "trash runs" at Serrano's residence recovering various banking receipts (wire transfers, deposit receipts and money orders).  (Tr. at 91; Plaintiff's Ex. 8, 11, 12, 13, 14.)

After a bench trial, the trial court entered judgment in favor of the State for the truck and in favor of Serrano for the cash. (Appellant's App. at 13.) The court concluded that Serrano used his truck to transport or facilitate the transportation of a controlled substance for the purposes of committing a drug related offense, specifically, possession of cocaine or a narcotic drug in violation of Indiana Code § 35-48-4-6 (2008).  (Appellant's App. at 12.)

Serrano's appeal has challenged the sufficiency of the evidence, contending the State failed to prove that the presence of cocaine in his truck was anything more than incidental or fortuitous.  A divided Court of Appeals agreed, and reversed, concluding the State failed to demonstrate a nexus between Serrano's possession of cocaine residue and the use of his truck. Serrano v. State, No. 02A3-0908-CV-362, (Ind. Ct. App. Jun 28, 2010).   We grant transfer to confirm the rationale of the Court of Appeals in reversing the trial court.

**In Rem Forfeiture**

In rem forfeiture is an ancient concept under which courts obtained jurisdiction over property when it was virtually impossible to seek justice against property owners guilty of violating maritime law because they were overseas.  Civil forfeiture traces to ancient Roman and medieval English law; both made objects used to violate the law subject to forfeiture to the sovereign.  See United States v. 785 St. Nicholas Ave., 983 F.2d 396, 401–02 (2d Cir. 1993).

3

Civil forfeiture is no longer tethered to difficulties in obtaining personal jurisdiction over an individual. It now serves as "one of the most potent weapons in the judicial armamentarium," See United States v. 384–390 West Broadway, 964 F.2d 1244, 1248 (1st Cir. 1992) (discussing widespread use of in rem proceedings against drug offenders). Civil forfeiture is a leading method for imposing economic sanctions against narcotics traffickers.

Today, all states have statutory provisions for some form of asset forfeiture, and there are more than four hundred federal forfeiture statutes relating to various federal crimes. Marian R. Williams, Jefferson E. Holcomb, Tomislav V. Kovandzic & Scott Bullock, Institute for Justice, Policing for Profit: The Abuse of Civil Asset Forfeiture 11 (2010). An important feature of many of these statutes is characterization of the process as civil forfeiture under which (by contrast to criminal forfeiture) a property owner need not be found guilty of a crime—or even charged—to lose permanently their cash, car, home or other property. The relative ease of effecting such forfeiture and the disposition of the assets have become a matter of public note.[1]

## Indiana's Forfeiture Arrangements

Indiana's system for civil forfeitures proceeds under at least two constitutional provisions and a set of implementing statutes.

The leading constitutional provision governing forfeiture is a product of the Constitutional Convention of 1850–51. Aside from dealing with the State's catastrophic debt problems arising from the Internal Improvements program and placing limits on the scourge of local and special legislation, the convention's leading achievement was an education article that mandated a "general and uniform system of Common Schools, wherein tuition shall be without charge, and equally open to all." Ind. Const. art. 8, § 1. At the core of the financing scheme for this objective was creation of the Common School Fund, a "perpetual" depository for "support of

---

[1] Heather Gillers, Mark Alesia & Tim Evans, *Cashing in on Crime*, Indianapolis Star, Nov. 14, 2010, at A1.

Common Schools, and no other purpose." Ind. Const. art. 8, § 3.[2]  Among the multiple financial sources committed to this fund are "the fines assessed for breaches of the penal laws of the State; and from all forfeitures which may accrue." Ind. Const. art. 8, § 2.  In addition to these requirements, of course, the transfer of property from private hands to the government is subject to due course of law provisions. Ind. Const. art. 1, §§ 12, 21.

The legislation that implements these constitutional directives is labeled Forfeiture of Property Used in Violation of Certain Criminal Statutes.  It provides three grounds for the seizure of property.  The State may seize property: (1) if the seizure is incident to lawful arrest, search or administrative inspection, or (2) if it is the "subject of a prior judgment in favor of the state or unit in a proceeding under" the forfeiture statute, or (3) if a court issues an order for seizure after an ex parte determination of probable cause that the property is subject to seizure under the forfeiture statute. See Ind. Code. § 34-24-1-2 (2008).  The Code directs that when a court enters judgment for the State it shall order the proceeds "transferred to the treasurer of state for deposit in the common school fund." Ind. Code § 34-24-1-4 (d)(2)(D) (2008).[3]

The case before us rests on the first grounds for forfeiture.  Law enforcement initially impounded Martin Serrano's vehicle while the police transported Serrano for fingerprinting to resolve questions surrounding an outstanding warrant in his name.  After releasing Serrano, the officers continued to hold his vehicle while they sought a search warrant, which was granted and executed the next day.

Indiana's forfeiture statute announces a standard on which the State's petition for forfeiture may be granted. It states in relevant part:

---

[2] See Donald F. Carmony, The Indiana Constitutional Convention of 1850-1851, 157–60, (Bethany L. Natali & Elizabeth R. Osborn, eds. 2009), (Master's Thesis, Indiana University 1931) for a description of the extensive deliberations on design of the Common School Fund.

[3] From the proceeds, the court may except law enforcement expenses incurred "for the criminal investigation associated with the seizure" and a prosecutor's expenses associated with the forfeiture proceeding and the expenses related to the criminal prosecution. Ind. Code § 34-6-2-73 (2008).  Whether this limited diversion, calculating actual expenses on a case-by-case basis, is consonant with the constitutional command that "all forfeitures" be deposited in the Common School Fund is an unresolved question.

(a)    The following may be seized:

(1)    All vehicles . . . if they are <u>used</u> or <u>intended</u> for use by the person . . . to transport, or in any manner to facilitate the transportation of the following:

(A)    A controlled substance for the purpose of committing, attempting to commit, or conspiring to commit any of the following:

(vii)    Possession of cocaine or a narcotic drug . . . .

Ind. Code § 34-24-1-1 (a)(1)(A)(vii) (emphasis added). To obtain the right to dispose of property, use the property, or recover law enforcement costs the State must demonstrate by a preponderance of the evidence that the property was subject to seizure. Ind. Code § 34-24-1-4(a).

In <u>Katner v. State</u>, 655 N.E.2d 345 (Ind. 1995), this Court held that to sustain a forfeiture the State must demonstrate that the property sought in forfeiture was used to commit one of the enumerated offenses under the statute. This nexus, we said, best articulates the statute's requirement of proof by a preponderance that the property is subject to forfeiture. <u>Id.</u> at 349. Requiring such proof, Justice Selby wrote, is a "means to guarantee that the government is seizing actual instrumentalities of illegal drug trade. . . . Depriving persons of their property such as vehicles unrelated to the drug trade will do little to advance our Legislature's intent." <u>Id.</u> at 349. Drawing a comparison to the Seventh Circuit's application of federal statutes, we held that our statute "requires more than an incidental or fortuitous connection between the property and the underlying offense." <u>Id.</u> at 348–49 (comparing our statute to the federal act discussed in <u>United States v. 916 Douglas Avenue</u>, 903 F.2d 490 (7th Cir. 1990)).[4]

Katner had been arrested following a traffic stop and violent altercation with police. Upon this arrest, officers discovered that Katner had a container in his pocket that contained cocaine residue. The State filed for forfeiture of his vehicle based on Katner's possession of less than .06 of one gram of cocaine. We adopted the Court of Appeals' decision in <u>Katner</u>. "While

---

[4] Accord, <u>Putnam Co. Sheriffs Dept. v. Smelley</u>, No. 67C01-0902-MI-41 (Putnam Circuit Court, Bolk, J., Feb. 17, 2010) (alert by canine, plus cash found in van, held insufficient to sustain forfeiture).

the presence of the cocaine residue in the glass tube was sufficient to support Katner's possession conviction, his possession of the substance in his automobile did not constitute 'transportation' of cocaine for the <u>purpose</u> of possessing the drug." <u>Katner v. State</u>, 640 N.E.2d 388, 390 (Ind. Ct. App. 1994). Our own description of how the statute works under such circumstances was this:

> The State must show that the operator used (1) the vehicle to transport an illicit substance or item listed in the statute, (2) for the purpose of committing possession, attempting to commit possession, or conspiring to possess the substance or item. The second limitation, requiring the State to show transportation for a specific purpose, serves an important function, <u>i.e.</u> avoiding forfeiture <u>where the operator of a vehicle coincidentally possesses drug residue, but is not transporting the residue, or using the vehicle in any other way to further possession or conspiracy to possess.</u>

<u>Katner</u>, 655 N.E.2d at 349 (emphasis added).

Serrano's truck was found to have cocaine residue in the front and back carpet and on the top of a box of quarters. (Tr. at 83.) The State also presented various wire transfer confirmations, deposit receipts and money orders (mainly gathered from the trash pulls), and copies of Serrano's tax returns, by which it sought to establish the inference that Serrano was living well beyond his means and thus must be involved in some sort of drug trade. The resulting inferences were insufficient to establish by a preponderance that Serrano's drug possession at the time he was arrested was furthered by the use of his vehicle or that Serrano's vehicle was used for the purpose of possessing cocaine.

Put another way, the State's evidence does not compel a conclusion that the presence of cocaine was anything more than "incidental or fortuitous." <u>Katner</u>, 655 N.E.2d at 348–49. The State presented no evidence or link to any drug transactions or trade other than the initial information from an anonymous informant that the grocery store was receiving large shipments of drugs. Serrano admitted he was a cocaine user, and without expounding, it seems apparent

that there are numerous ways that cocaine residue may have made its way into the truck that do not involve the use of his vehicle in furthering the possession of cocaine.

## Conclusion

The judgment of the trial court is reversed.

Dickson, Sullivan, Rucker, and David, JJ., concur.