## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 31 2019, 6:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Larry W. Wilson
Branchville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry W. Wilson, *Appellant-Respondent,* v. State of Indiana *ex rel.* Evansville-Vanderburgh County Drug Task Force, *Appellee-Petitioner.* | January 31, 2019 Court of Appeals Case No. 82A05-1711-MI-2645 Appeal from the Vanderburgh Circuit Court The Honorable David D. Kiely, Judge The Honorable Kelli E. Fink, Magistrate Trial Court Cause No. 82C01-1607-MI-3616 |

**Mathias, Judge.**

[1] Larry W. Wilson ("Wilson") appeals the judgment of the Vanderburgh Circuit Court in favor of the State of Indiana on behalf of the Evansville-Vanderburgh County Drug Task Force ("the State") in the State's *in rem* complaint for forfeiture against $1,594 in U.S. currency that was confiscated during Wilson's arrest for various drug offenses. Wilson presents two issues on appeal, which we restate as: (1) whether the State's complaint for forfeiture was timely filed; and (2) whether the State presented sufficient evidence to establish that the money seized was connected to Wilson's criminal acts sufficient to subject the money to forfeiture.

[2] We affirm.

## Facts and Procedural History

[3] In the summer of 2016, the Evansville Police Department ("EPD") received complaints that Wilson was dealing drugs out of his apartment and had threatened other tenants of the apartment complex with a gun. Police began an investigation into the allegations. On July 14, 2016, the police stopped two men after they had visited Wilson's apartment. These men were found in possession of methamphetamine, and both admitted they had purchased the methamphetamine from Wilson. One of the men also confirmed that Wilson had a handgun.

[4] The police then obtained a warrant to search Wilson's apartment. The police executed the warrant on July 15, 2016, and found methamphetamine, marijuana, prescription drugs, digital scales, glass pipes, and two handguns.

The officers also discovered $1,002 in cash lying on the bed. The only two people in the apartment were Wilson and his girlfriend. A search of Wilson's person revealed an additional $592 in cash in his pocket.

[5] That same day, the State charged Wilson with Count I, Level 3 felony dealing in methamphetamine; Count II, Level 3 felony dealing in a narcotic drug; Count III, Level 4 felony unlawful possession of a firearm by a serious violent felon; Count IV, Level 6 felony maintaining a common nuisance. Count V, Class B misdemeanor possession of marijuana; and Count VI, Class C misdemeanor possession of paraphernalia. The State also alleged that Wilson was an habitual offender.

[6] On July 25, 2016, the State filed an *in rem* complaint seeking forfeiture of the $1,594 in cash found on or near Wilson at the time of his arrest. The State initially sent service of process to Wilson by the sheriff's department that same day, but the service was deemed failed on July 28, 2016, because it was "not deliverable as address[ed]." Appellant's App. pp. 160–61.

[7] On November 14, 2016, Wilson entered into a plea agreement with the State and pleaded guilty to Count III, Level 4 felony unlawful possession of a handgun by a serious violent felon. He also pleaded guilty to Count II, but as a

lesser-included Level 6 felony.[1] On January 10, 2017, the trial court sentenced Wilson to an aggregate term of seven years executed.

[8] In the forfeiture action, the State again attempted to serve process on Wilson via the sheriff's department on January 27, 2017. This attempt was delayed because Wilson had been transferred to the Department of Correction. The State again attempted service on March 1, 2017, and Wilson was finally served while in custody of the Department of Correction. On March 23, 2017, Wilson filed an objection to the request for forfeiture.

[9] The trial court held a bench trial on the complaint for forfeiture on June 9, 2017. Wilson testified that the money and drugs were found in a "lockbox," that belonged to the woman living with him. Tr. p. 27. Wilson also indicated that he did not object to the forfeiture of the money found on the bed because, he claimed, he did not know where that money came from. In contrast to the money found on the bed, Wilson claimed that the $592 found on his person was cash he was saving from his job as a construction worker and denied that he had earned the money selling drugs. In support of this claim, Wilson offered into evidence a W-2 tax form showing that he had earned over $7,000 that year working for a construction company. Wilson admitted that he had pleaded

---

[1] There is no crime of Level 6 felony dealing in a narcotic drug. *See* Ind. Code § 35-48-4-1 (defining dealing in cocaine or a narcotic drug as a Level 5 to Level 2 felony depending upon the circumstances of the crime). We take this to mean that Wilson pleaded guilty to Level 6 felony *possession* of a narcotic drug as a lesser-included offense of the charged crime of Level 3 dealing in a narcotic drug. *See* Ind. Code § 35-48-4-6(a) (defining possession of a narcotic drug as a Level 6 felony).

guilty but stated that his conviction was "supposed to be[] possession."[2] Tr. p. 29. He also admitted to regularly using methamphetamine and marijuana. The trial court took the matter under advisement and issued an order granting the complaint for forfeiture on June 23, 2017. Wilson now appeals.

## *In Rem* Forfeiture

[10]     As our supreme court explained in *Serrano v. State*:

> *In rem* forfeiture is an ancient concept under which courts obtained jurisdiction over property when it was virtually impossible to seek justice against property owners guilty of violating maritime law because they were overseas. Civil forfeiture traces to ancient Roman and medieval English law; both made objects used to violate the law subject to forfeiture to the sovereign. Civil forfeiture is no longer tethered to difficulties in obtaining personal jurisdiction over an individual. It now serves as one of the most potent weapons in the judicial armamentarium[.] Civil forfeiture is a leading method for imposing economic sanctions against narcotics traffickers.

> Today, all states have statutory provisions for some form of asset forfeiture, and there are more than four hundred federal forfeiture statutes relating to various federal crimes. An important feature of many of these statutes is characterization of the process as civil forfeiture under which (by contrast to criminal forfeiture) a property owner need not be found guilty of a crime—or even charged—to lose permanently their cash, car, home or other

---

[2] As noted in footnote 1, *supra*, Wilson appears to have been correct that his conviction was for possession, rather than dealing.

property. The relative ease of effecting such forfeiture and the disposition of the assets have become a matter of public note.

946 N.E.2d 1139, 1141 (Ind. 2011) (internal citations and quotations omitted).[3]

## I. Timeliness of the Action

Wilson argues that the State's complaint for forfeiture was untimely. Both parties appear to agree that the timeliness of a forfeiture action is controlled by Indiana Code section 34-24-1-3(a). At the time of the instant action, this section provided:

> The prosecuting attorney for the county in which the seizure occurs may, within ninety (90) days after receiving written notice from the owner demanding return of the seized property or within one hundred eighty (180) days after the property is seized, whichever occurs first, cause an action for reimbursement of law enforcement costs and forfeiture to be brought by filing a complaint in the circuit or superior court in the jurisdiction where the seizure occurred. . . .

I.C. § 34-24-1-3(a) (2011).[4]

---

[3] Wilson makes no argument that the seizure of his cash was unconstitutionally excessive. Thus, the eventual decision of the United States Supreme Court in *Timbs v. Indiana*, No. 17–1091, which will decide whether the excessive fines clause of the Eighth Amendment is applicable to the several states, is not at issue here.

[4] This section was amended effective July 1, 2018, to shorten the time limits in which the State may file a complaint for forfeiture. This section now provides that:

> The prosecuting attorney for the county in which the seizure occurs may, within twenty-one (21) days after receiving written notice from the owner demanding return of the seized property or within ninety (90) days after the property is seized, whichever occurs first, cause an action for forfeiture to be brought by filing a complaint in the circuit or superior court in the jurisdiction where the seizure occurred. . . .

[12]    Wilson argues that the State did not timely file its complaint for forfeiture because the State failed to properly serve him for eight months. He therefore argues that the complaint should have been dismissed. Wilson, however, never presented this argument to the trial court. As a general rule, an argument may not be advanced for the first time on appeal. *Leatherman v. State*, 101 N.E.3d 879, 885 (Ind. Ct. App. 2018). The failure to present an argument below results in waiver on appeal. *Id.* This is so because a trial court cannot be found to have erred as to an issue that it never had an opportunity to consider. *Id.* Thus, Wilson's argument is waived. But even if we were to consider Wilson's timeliness argument, he would not prevail.

[13]    The applicable version of Indiana Code section 34-24-1-3(a) provides that the State could file a forfeiture complaint within ninety days after receiving notice from the owner demanding return of the seized property, or within 180 days after the property was seized, whichever occurs first. Here, there is no indication that Wilson filed any demand for the return of his property until after the State filed its complaint for forfeiture. And the State filed its complaint for forfeiture on July 25, 2016, a mere ten days after the seizure of the money on July 15, 2016. Thus, the State's complaint for forfeiture was timely under the controlling statute.

---

I.C. §. 34-24-1-3(a) (2018). Neither party argues that this amendment to the statute is retroactive. We therefore apply the version of the statute that was in effect at the time of the instant forfeiture action. Even if the statute were retroactive, it would have no effect on the resolution of the present case, as we conclude *infra* that the State timely filed its action within ten days after the seizure of the money.

[14]  Wilson's contention that the complaint was not filed until he had been served is unavailing. The failure to effect proper service of process does not mean that a complaint has not been filed within the applicable limitations period. An action is deemed to be filed when the complaint and summons are filed. *See Ray-Hayes v. Heinamann*, 760 N.E.2d 172, 173 (Ind. 2002) (holding that a statute of limitations continues to run until the plaintiff files a complaint, summons, and filing fee), *aff'd in relevant part on reh'g*, 768 N.E.2d 899 (citing *Boostrom v. Bach*, 622 N.E.2d 175, 175–76 (Ind. 1993)).

[15]  Thus, a failure to properly effect service of process within the statutory limitations period does not mean that a complaint was untimely. Such failure does, however, deprive the trial court of jurisdiction over the person who has not been properly served. *See Norris v. Personal Fin.*, 957 N.E.2d 1002, 1007 (Ind. Ct. App. 2011) (noting that without effective service of process, a trial court does not obtain personal jurisdiction over a defendant).

[16]  Here, the State filed its complaint for forfeiture along with the summons ten days after the seizure of the cash at issue. *See* Appellant's App. pp. 14–16, 159–60. This tolled the applicable statute of limitations. *See Ray-Hayes*, 760 N.E.2d at 173. Accordingly, Wilson's claim that the State's complaint for forfeiture was untimely because he was not served within the applicable statute of limitations is unavailing; the complaint was timely because it was filed, along with the summons, within the statutory limitations period.

[17] To the extent that Wilson complains about deficiencies in the State's service of process, such claims are waived unless presented in a responsive pleading or an objection filed prior to a responsive pleading. *See* Ind. Trial Rule 12(H)(1)(b) (providing that a defense of insufficiency of process or insufficiency of service of process is waived if it is "neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by [Trial Rule] 15(A) to be made as a matter of course.").[5] Wilson presented no claims regarding the adequacy of service of process in his responsive pleading. *See* Appellant's App. pp. 20–27. In fact, he admitted in his responsive pleading that he was served on March 1, 2017. *See id.* at 23. As a result, Wilson does not, and could not, argue that the trial court lacked personal jurisdiction over him.

## II. Sufficiency of the Evidence

[18] Wilson also claims that the State failed to present sufficient evidence to support the trial court's forfeiture order. In reviewing the sufficiency of the evidence in a civil forfeiture case, as in all civil cases, we consider only the evidence most favorable to the judgment and any reasonable inferences that may be drawn

---

[5] Indiana Trial Rule 12(H)(1)(a) provides that such defenses are also waived if omitted from a motion "in the circumstances described in subdivision (G)" of Rule 12. Trial Rule 12(G) provides:

> A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted. He may, however, make such motions as are allowed under subdivision (H)(2) of this rule.

There is no indication in the record that Wilson made any motion under Trial Rule 12. Thus, Trial Rule 12(G) is inapposite.

therefrom. *Gonzalez v. State*, 74 N.E.3d 1228, 1230 (Ind. Ct. App. 2017) (citing *Lipscomb v. State*, 857 N.E.2d 424, 427 (Ind. Ct. App. 2006)). On appeal, we neither reweigh the evidence nor assess the credibility of the witnesses. *Id*. Instead, we will affirm when there is substantial evidence of probative value to support the trial court's ruling. *Id*. We will reverse only when we are left with a definite and firm conviction that a mistake has been made. *Id*.

[19] To obtain the right to dispose of property, use the property, or recover law enforcement costs, the State must demonstrate by a preponderance of the evidence that the property was subject to seizure. *Gonzalez*, 74 N.E.3d at 1230 (citing Ind. Code § 34-24-1-4(a); *Serrano*, 946 N.E.2d at 1142–43). The State must establish a nexus between the property and the commission of an offense. *Id*. "[T]his 'requires more than an incidental or fortuitous connection between the property and the underlying offense.'" *Id*. at 1230 (quoting *Serrano*, 946 N.E.2d at 1143).

[20] The statute governing the forfeiture of money provides in relevant part:

> (a) The following may be seized:
>
> * * *
>
> (2) All money . . .
>
> > (A) furnished or intended to be furnished by any person in exchange for an act that is in violation of a criminal statute;
> >
> > (B) used to facilitate any violation of a criminal statute; or

> (C) traceable as proceeds of the violation of a criminal statute.

Ind. Code § 34-24-1-1.[6]

[21] Considering only the evidence and reasonable inferences in favor of the trial court's ruling, we conclude that the State presented evidence sufficient to establish by a preponderance of the evidence that the money found on Wilson's person was either furnished by any person in exchange for an act that is in violation of a criminal statute, used to facilitate any violation of a criminal statute, or traceable as proceeds of the violation of a criminal statute. Specifically, two separate individuals told the police that they had purchased methamphetamine from Wilson, and the very next day the police found in Wilson's apartment methamphetamine, marijuana, prescription drugs, digital

---

[6] The forfeiture statute also provides that money found on or near a person who is committing, attempting to commit, or conspiring to commit certain crimes shall be considered as prima facie evidence that the money has been used or was to have been used to facilitate the violation of a criminal statute or the proceeds of the violation of a criminal statute. I.C. § 34-24-1-1(d). Among the listed crimes that raise this rebuttable presumption is dealing in or manufacturing cocaine or a narcotic drug. *Id.* at § 1(d)(2). Wilson argues that this presumption is inapplicable in the present case. Wilson correctly notes that he was not convicted of *dealing* in or manufacturing a narcotic drug but was instead convicted of a Level 6 felony as a lesser-included offense of the charged crime of Level 3 dealing in a narcotic drug. Since there is no crime of dealing in a narcotic drug as a Level 6 felony, Wilson's conviction on this count must have been for *possession* of a narcotic drug. *See* Ind. Code § 35-48-4-6(a) (defining possession of a narcotic drug as a Level 6 felony). Possession of a narcotic drug is not one of the crimes listed in Indiana Code section 34-24-1-1(d) as giving rise to the rebuttable presumption.

The State argues that even though Wilson was not convicted of dealing in a narcotic drug, it need not prove that Wilson was actually convicted of the crime to raise the rebuttable presumption. To be sure, a property owner need not be convicted of a crime, or even charged with a crime, for his or her property to be subject to forfeiture. *Serrano*, 946 N.E.2d at 1141. But this is not the same as saying that a property owner need not be convicted of a crime to raise the rebuttable presumption contained in Indiana Code section 34-24-1-1(d). We need not decide this question today, however, because even without the statutory presumption, as discussed *infra*, the State presented evidence sufficient to establish a nexus between the money and the commission of a criminal offense.

scales, glass pipes, and two handguns. From this evidence, the trial court, acting as the trier of fact, could reasonably conclude that the State had proven by a preponderance of the evidence that the $592 in cash found on Wilson's person at the time of his arrest was the proceeds of his sale of illicit drugs. Wilson's argument that the money was earned from his construction job is simply a request that we believe his testimony when the trial court clearly did not. This is not within our prerogative as an appellate court. *Gonzalez*, 74 N.E.3d at 1230.

## Conclusion

[22] Wilson waived his appellate argument regarding the timeliness of the State's forfeiture complaint by failing to first present this issue to the trial court. Waiver notwithstanding, the fact that the State did not give Wilson service of process until after the statutory limitations period had expired does not mean that the complaint itself was untimely. In addition, any complaint regarding the adequacy of the service of process was waived for failure to present it in a responsive pleading or motion prior to the responsive pleading. Lastly, even without the assistance of the statutory rebuttable presumption contained in the forfeiture statute, the State presented evidence sufficient to support the trial court's forfeiture order. We therefore affirm the judgment of the trial court.

[23] Affirmed.

Bailey, J., and Bradford, J., concur.