


FILED

Apr 30 2024, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-MI-345

## Angela Y. Smith, Dylan Williams, and $11,180 in United States Currency,

*Appellants*

–v–

## State of Indiana,

*Appellee*

---

Argued: February 19, 2024 | Decided: April 30, 2024

Appeal from the Marion Superior Court
No. 49D03-2009-MI-33278
The Honorable Gary L. Miller, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-MI-2910

---

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, Goff, and Molter concur.

**Rush, Chief Justice.**

Civil forfeiture laws have been around since before our country's founding. But they are broader and far more widespread today, providing law enforcement with a "highly profitable" tool[1] that allows the State to seize property involved in criminal activity—particularly drug offenses. This tool has broad remedial characteristics, such as creating an economic disincentive to continue engaging in illegal drug activity and permitting law enforcement to defray expenses incurred in the battle against drugs. But it also has significant criminal and punitive characteristics, such as permitting the seizure of property absent a criminal charge and punishing those whose property is confiscated. As a result, there is an inherent tension between the State's use of civil forfeiture and citizens' rights and interests. And so, to ensure a proper balance, civil forfeiture actions must strictly comply with the laws our Legislature has carefully crafted.[2]

Here, the State seized $11,180 found during a search of Dylan Williams's apartment. The State then initiated forfeiture proceedings against the money. Williams did not answer the State's complaint, but his aunt successfully moved to intervene and filed an answer asserting that she owned the money and that it was not tied to any criminal activity. Following a hearing, the trial court entered judgment for the State.

We reverse and remand. In reaching that decision, we clarify the procedural framework for when the State seeks forfeiture of money and who constitutes an "owner." We then apply that framework and hold that the State's evidence fails to support the trial court's forfeiture order. And we hold that the money must be returned to the aunt because she alone claimed ownership, she presented uncontradicted evidence establishing the $11,180 belongs to her, and the trial court neither concluded she was not the owner nor made any findings or statements questioning her credibility.

---

[1] *Leonard v. Texas*, 137 S. Ct. 847, 848–49 (2017) (Thomas, J., respecting denial of certiorari).

[2] We held oral argument in this case during our first "Night Court for Legislators." We sincerely thank the legislators and their staffs who attended this special event.

# Facts and Procedural History

Dylan Williams was on parole in September 2020 when he was notified during a scheduled meeting that he had tested positive for illegal drugs. Because of the positive test, agents decided to search Williams's apartment pursuant to his parole agreement. They brought Williams to the apartment, and he let them inside where they encountered his cousin who was visiting from Chicago. The agents recovered a digital scale from the cousin's pocket and found what they believed to be crack cocaine in a closet. They then contacted a police detective to assist, and he applied for and was granted a search warrant for the apartment.

While executing the warrant, law enforcement recovered illegal drugs, packaging materials, and $11,180 in cash—$3,500 in various denominations from inside Williams's wallet and $7,680 in various denominations secured by a rubber band from a dresser in his bedroom. As a result, the State charged Williams with Level 3 felony dealing in a Schedule I controlled substance, Level 6 felony possession of a narcotic drug, and Class A misdemeanor possession of a controlled substance. Williams ultimately pleaded guilty to the Level 6 felony possession charge, and the State dismissed the other two counts.

Meanwhile, the State sought forfeiture of the $11,180, alleging the money "had been furnished or was intended to be furnished in exchange for a violation of a criminal statute, or is traceable as proceeds of a violation of a criminal statute." Williams did not answer the complaint.[3] But his aunt, Angela Smith, who lived in Milwaukee, Wisconsin, moved to intervene under Trial Rule 24(A)(2), asserting the money is her "exclusive property." The trial court granted that motion, and Smith filed a timely answer responding to the complaint. She stated that the money belonged to her and that it was neither "proceeds of a violation of a criminal statute,

---

[3] We are concerned that the record does not confirm Williams was ever personally served with the forfeiture complaint and summons. *See* Ind. Code § 34-24-1-3(d). In fact, our review of the record and other documents on Odyssey suggest that he was never personally served.

nor furnished or intended to be furnished for a violation of any criminal statute."

In December 2022, the court held a hearing at which the parties presented competing explanations for the $11,180. The State argued that "[t]he way the money was stored" and "the denominations that were found all indicate that there was criminal activity." In support, the State presented testimony from one witness, Detective Ryan Graber, who helped search the apartment. He testified that he "saw some cash . . . in a couple different locations" and that he "observed some narcotics in there as well." But he did not identify what "narcotics" were found, and he did not know where officers found "the particular narcotic drug" that led to Williams's conviction.

Smith then testified, explaining that she withdrew $29,000 in June 2020 because her physically and emotionally abusive boyfriend regularly stole money from her and forced her to give him money. Later that month, about three months before the State's seizure, Smith said she met Williams at his mother's house where she gave him $15,000 in cash "to hold for" her so she could "hide the money" from her abuser. She kept the other $14,000 with her, "[u]nfortunately" carrying it in her purse every day. Smith corroborated her testimony with bank records, a police report, photographs of head injuries her boyfriend inflicted on her, and a protective order she obtained and renewed against him.

After the hearing, the trial court entered judgment for the State, concluding that "the currency in question is subject to forfeiture . . . and the State has met its burden of proof by a preponderance of the evidence that the currency should be seized." Smith appealed, and our Court of Appeals affirmed. *Smith v. State*, No. 22A-MI-2910, at *1 (Ind. Ct. App. July 24, 2023) (mem.). We then granted Smith's petition to transfer, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

This appeal implicates two standards of review. We interpret the civil forfeiture statutes de novo. *Abbott v. State*, 183 N.E.3d 1074, 1080 (Ind.

2022). But in applying that interpretation, we consider only the evidence favorable to the trial court's judgment and any reasonable inferences drawn therefrom without reweighing the evidence or assessing witness credibility. *Lipscomb v. State*, 857 N.E.2d 424, 427 (Ind. Ct. App. 2006).

# Discussion and Decision

Civil forfeiture is a legal fiction that authorizes "action against inanimate objects for participation in alleged criminal activity." *Abbott*, 183 N.E.3d at 1079 (quotation omitted). Participation is all that's required; property can be seized and forfeited "regardless of whether the property owner is proven guilty of a crime—or even charged with a crime." *Serrano v. State*, 946 N.E.2d 1139, 1140 (Ind. 2011). In the context of illegal drug activity, forfeiture actions "are designed to be a relatively efficient means to remove, from its owner, property used to further illegal trafficking in drugs." *Katner v. State*, 655 N.E.2d 345, 347 (Ind. 1995). Yet, despite that laudable design, civil forfeitures "are not favored" due to their "significant criminal and punitive characteristics." *Hughley v. State*, 15 N.E.3d 1000, 1005 (Ind. 2014) (quotation omitted).

In these ways, actions under Indiana's civil forfeiture statutes implicate unique characteristics—they can deter illegal activity, but they can also provide the State with financial incentives that encumber property owners. *See State v. Timbs*, 134 N.E.3d 12, 38 (Ind. 2019). Both our Legislature and our Court have recognized these competing characteristics in recent years. Indeed, the General Assembly has amended the forfeiture statutes in seventeen of the last twenty years. Those changes include expanding property that is subject to forfeiture, providing innocent owners with the ability to petition for the release of certain property during the pendency of an action, and reducing the State's time to file a forfeiture complaint. We have likewise been active in this area. For example, we have held that forfeiture actions may be subject to the Eighth Amendment's Excessive Fines Clause, *id.* at 23, and that the right to a jury trial under Article 1, Section 20 of the Indiana Constitution attaches when the State seeks to confiscate money, *State v. $2,435 in U.S. Currency*, 220 N.E.3d 542, 544 (Ind. 2023). These decisions, among others, reflect our role

to apply the law as written and enforce civil forfeitures "only when within both the letter and spirit of the law." *Hughley*, 15 N.E.3d at 1005 (quotation omitted).

Turning to that law, the civil forfeiture statutes permit forfeiture in a contested action if the State shows by a preponderance of the evidence at a hearing that the seized property falls within one of several categories. Ind. Code § 34-24-1-4; *see also id.* § -1. The State generally makes that showing by establishing a "substantial connection," or "nexus," that the property "was used to commit one of the enumerated offenses under the statute." *Serrano*, 946 N.E.2d at 1140, 1143. As is relevant here, the statute provides two avenues for the State to seek forfeiture of money. I.C. § 34-24-1-1(a)(2), (d). One creates a rebuttable presumption that money is subject to forfeiture. *Id.* § -1(d). But the other does not, *id.* § -1(a)(2), imposing a heightened burden on the State at a hearing. Here, the State proceeded only under this latter avenue, and thus the rebuttable presumption does not apply. This case, however, allows us to clarify and apply the proper procedure, including the State's burden under both avenues.

We first analyze the relevant statutes and outline the procedural framework when the State seeks the forfeiture of money in a contested action. Within that discussion, we clarify who constitutes an "owner" of money if the State fails to meet its burden. And we then apply those principles to this forfeiture action in reviewing the trial court's order.

## I.  In a contested action, the State's burden depends on the alleged criminal offense that subjects the money to forfeiture.

The parties dispute the State's burden at a contested hearing. In the State's view, there is "no need" for a trial court "to address the merits of the forfeiture" if an intervenor fails to establish that they own the money. In Smith's view, the State must always establish the money is subject to forfeiture, and the court need only determine ownership if the State doesn't meet its burden. Analyzing the relevant statutes confirms Smith is correct.

When bringing a forfeiture action, the State must timely file a complaint "in the jurisdiction where the seizure occurred." I.C. § 34-24-1-3(a). At that point, an "owner" or "any person whose right, title, or interest is of record" has twenty days to file an answer. *Id.* § -3(d). If, after that time, "there is no answer on file," then the court on the State's motion "shall enter judgment" in the State's favor and order the money distributed according to law. *Id.* § -3(e). But when there is an answer on file, a hearing is triggered at which the contesting party "may appear." *Id.* § -3(d). And at that hearing, the State "must show by a preponderance of the evidence that the" money is "subject to seizure." *Id.* § -4(a). But how this burden is met turns on the statute the State relied on in its complaint.

One statute, Section 34-24-1-1(a)(2), allows the State to seize money if it was (1) "furnished or intended to be furnished by any person in exchange for an act that is in violation of a criminal statute," (2) "used to facilitate any violation of a criminal statute," or (3) "traceable as proceeds of the violation of a criminal statute." *Id.* § -1(a)(2). This "violation of a criminal statute" language implicates a broad array of offenses, including low-level drug offenses. *See id.* (permitting seizure of money that is "commonly used as consideration for a violation of IC 35-48-4," which is titled "Offenses Relating to Controlled Substances"). At a hearing in a forfeiture action invoking Section 34-24-1-1(a)(2), the State must identify the applicable criminal statute that was violated and establish a substantial connection between the seized money and that crime. *See Katner*, 655 N.E.2d at 348; *Serrano*, 946 N.E.2d at 1140; *Lipscomb*, 857 N.E.2d at 428–29; *Gonzalez v. State*, 74 N.E.3d 1228, 1231–32 (Ind. Ct. App. 2017); *Brown v. Eaton*, 164 N.E.3d 153, 161–63 (Ind. Ct. App. 2021), *trans. denied*. And if the trial court finds the State has made these showings by a preponderance of the evidence, the court enters judgment for the State and orders the money distributed accordingly. I.C. § 34-24-1-4(c).

The other statute, Section 34-24-1-1(d), creates a rebuttable presumption that money is subject to forfeiture if it was "found near or on a person who is committing, attempting to commit, or conspiring to commit" one of sixteen listed drug offenses. *Id.* § -1(d). Each is a serious drug offense for dealing, manufacturing, or possessing significant quantities. *Id.* At a hearing in an action invoking this statute, the State

must identify the listed offense and establish that the seized money was found either near or on a person committing, attempting to commit, or conspiring to commit that crime. At that point, the money "is presumed forfeitable—period." *Lipscomb*, 857 N.E.2d at 428 (quoting *Caudill v. State*, 613 N.E.2d 433, 438 (Ind. Ct. App. 1993)). The burden then shifts to the contesting party to rebut the State's showing. And if the trial court finds the party failed to rebut that showing, the court enters judgment for the State and orders the money distributed accordingly. I.C. § 34-24-1-4(c).

The preceding two paragraphs raise a question—what happens to the money if the State fails to meet its burden? In that event, the "court shall order the property released to the owner." *Id.* § -4(b). And an owner may be an individual or other entity. *See Olympic Fin. Grp., Inc. v. State*, 176 N.E.3d 571, 575, 578 (Ind. Ct. App. 2021). But unlike an owner of a vehicle or real property, the owner of money is not always readily identifiable, particularly if the party contesting the forfeiture is not the person from whom the money was seized.

Since the Legislature has not defined "owner" under the civil forfeiture statutes, we interpret the term in its "plain, or ordinary and usual, sense," I.C. § 1-1-4-1(1), by turning to general-language dictionaries, *Performance Servs., Inc. v. Randolph E. Sch. Corp.*, 211 N.E.3d 508, 512 (Ind. 2023). One such dictionary defines "owner" in relevant part as "one who has the legal or rightful title to something," and "one to whom property belongs." *Owner*, Merriam-Webster, https://www.merriam-webster.com/dictionary/owner (last visited Apr. 30, 2024). Until the Legislature tells us otherwise, we adopt these definitions and understand

that, for purposes of the civil forfeiture statutes, an owner of money refers to the person to whom it belongs.[4]

And so, when the State fails to meet its burden at a forfeiture hearing, the trial court must order the money released to the person to whom it belongs. When the money was seized from the person contesting the forfeiture, the court will release the money to that person. But when someone else contests the forfeiture, that party must produce evidence showing the money belongs to them. The court must then determine whether that person has established ownership. If so, the court must order the money returned to that person. But if that person has not established ownership, the court must order the money returned to the person from whom the money was seized.

With this procedural framework in hand, we now determine its effect on this forfeiture action.

## II. The State failed to establish the requisite substantial connection, and Smith established the money belongs to her.

In alleging the $11,180 was subject to forfeiture, the State's complaint relied on only Section 34-24-1-1(a)(2), and thus the rebuttable presumption in Section 34-24-1-1(d) does not apply. Smith then successfully moved to intervene under Trial Rule 24(A), which required her to "claim[] an interest relating to a property" that "is the subject of the action." Ind. Trial Rule 24(A)(2). At that point, she adequately asserted her interest as a potential "owner of the seized property." I.C. § 34-24-1-3(d). And since she

---

[4] Other states that define "owner" in their civil forfeiture statutes use similar definitions. Haw. Rev. Stat. § 712A-1 ("a person . . . who has an interest in property"); Kan. Stat. Ann. § 60-4102(j) (same); Tenn. Code Ann. § 39-11-702(3) (same); Md. Code Ann. Crim. Proc. § 12-101(k)(1) ("a person having a legal, equitable, or possessory interest in property"); N.M. Stat. Ann. § 31-27-3(J) ("a person who has a legal or equitable ownership interest in property"); Tex. Code Crim. Proc. Ann. art. 59.01(6) ("a person who claims an equitable or legal ownership interest in property").

timely answered the State's complaint, the trial court held a hearing at which the State was required to prove its allegations by a preponderance of the evidence. In entering judgment for the State, the trial court did not determine that Smith was not the owner, concluding instead that "the currency in question is subject to forfeiture . . . and the State has met its burden of proof by a preponderance of the evidence that the currency should be seized."

In reviewing that decision, we first conclude that the State neither specifically identified an applicable criminal statute that was violated nor established a substantial connection between that crime and the money. We thus hold that the forfeiture order must be reversed. And we then hold that the money must be released to Smith. As the only person to claim ownership, she presented uncontradicted evidence that the money belongs to her. And the trial court neither concluded she was not the owner nor made any findings or statements questioning her credibility.

## A. The forfeiture order is not supported by sufficient evidence.

The State failed to show by a preponderance of the evidence that the $11,180 was forfeitable because the State did not identify a criminal statute that was violated and did not produce evidence showing a substantial connection between the money and any underlying offense.

In fact, both in the trial court and on appeal, the State has never tied the money to a specific, applicable offense. The complaint broadly alleged that the money either "had been furnished or was intended to be furnished in exchange for a violation of a criminal statute" or was "traceable as proceeds of a violation of a criminal statute." Then, at the hearing, the prosecutor simply stated that "the State's case is just that money received from an apartment where crimes were being committed. And the most highest explanation for that cash being present there is that Mr. Williams committed the crimes being committed." Though the State introduced evidence that Williams was convicted of Level 6 felony drug possession and was charged with two other counts that were dismissed, the State never identified an applicable statutory violation that subjected the money

to forfeiture. The only explicit mention of any violation during the hearing came from Smith's counsel when he thrice mentioned Williams's Level 6 felony conviction. And on appeal, the State simply asserts "the evidence allowed the trial court to find by a preponderance of the evidence that Williams possessed the seized money as part of [a] drug operation." Thus, on this record, it is unclear which drug offense in Indiana Code chapter 35-48-4 rendered the money forfeitable under Section 34-24-1-1(a)(2).

But assuming the underlying drug offenses are those for which Williams was charged, the State's evidence at best establishes an "incidental or fortuitous connection between" those crimes and the money. *Katner*, 655 N.E.2d at 348–39. At the hearing, the State relied on the sole testimony of Detective Graber, and he did not provide any evidence showing a substantial connection between the $11,180 and drug possession or dealing. He did not identify the type of drugs recovered from Williams's apartment, the quantity of those drugs, or the location where they were found. He also confirmed that he did not find any ledgers in the apartment and that the only scale found was recovered from the visiting cousin's pocket. As for the money, the State introduced photographs of the cash both behind a TV on Williams's bedroom dresser and in his wallet. Detective Graber confirmed he saw the money in these locations and explained that, consistent with narcotics trafficking, the money on the dresser was "banded up" and in "different denominations." But it is well-settled that "[t]he possession of large amounts of cash is not in and of itself illegal." *Brown*, 164 N.E.3d at 161. And the fact that a large sum of money in different denominations is held together by a rubber band does not alone create a substantial connection between that money and illegal drug activity.

By not establishing the requisite nexus between the money and an applicable offense, the State failed to meet its burden under the civil forfeiture statutes. And thus, the trial court's forfeiture order falls outside the "letter and spirit of the law." *Hughley*, 15 N.E.3d at 1005. We therefore reverse the forfeiture judgment and now turn to determine ownership.

## B. Smith's uncontradicted sworn testimony and corroborating exhibits establish that she is the owner of the money.

As stated above, the trial court did not conclude that Smith failed to establish she owns the $11,180. Though we could remand for the court to determine ownership, we decline to do so in the interest of judicial economy for three reasons: (1) only Smith claims to own the money; (2) she presented uncontradicted sworn testimony and corroborating exhibits establishing the money belongs to her; and (3) the court did not make any findings or statements to the contrary.

At the hearing, Smith testified that she was in a "horrible . . . abusive" relationship with a man who regularly stole money from her and forced her to withdraw money and give it to him. She explained that criminal charges had been filed against her abuser and that she was scheduled to be a witness at the upcoming trial. And she introduced a police report detailing an assault by him for which she had to have brain surgery, pictures from the hospital after the surgery, and a protective order she obtained and renewed against him. Though these incidents occurred about a year after she gave Williams the money, Smith testified that the physical abuse was just as severe when she made the exchange.

As for that exchange, Smith stated—and introduced corroborating bank statements—that she withdrew $29,000 "to hide the money" from her abusive boyfriend. Later that month, Smith met with Williams at his mother's house, about three months before the money was seized, where she gave him an envelope that included $15,000 in various denominations "to hold for" her. She clarified that she gave the money to Williams because the two had been close "throughout his childhood," and she "[a]bsolutely" believed she could trust him. And she explained that she was not comfortable giving the money to other family members or friends because she didn't want them to "know that [she] was being abused; [she] was ashamed of what was going on." Smith also added that she was "bothered" when she learned that only $11,180 of the $15,000 had been found. The State did not introduce any evidence contradicting Smith's sworn testimony or corroborating exhibits.

Yet, on appeal, the State presents three arguments for why we should conclude Smith is not the owner—each of them fails. The State first points to the detective's testimony that Williams did not mention Smith when asked about the source of the money. But he could have declined to mention his aunt for several reasons. The State next asserts that "[f]orfeiture should still result in a case like this where the person found in possession of the property makes no claim and an intervenor fails to establish ownership." Yet, for reasons explained above, this argument conflicts with the plain language of the statute. *See* I.C. § 34-24-1-4(a), (b). Finally, the State points to Williams's failure to appear at the hearing, asserting Smith "presented no testimony from Williams nor documents that directly substantiate any of [her] claims." To the latter point, as addressed previously, Smith produced ample documents supporting her claims. And to the former point, the State could have issued Williams a subpoena if it believed his testimony was important, but it did not. In fact, a close review of the record supports Smith's assertion that Williams was never "personally served with the Complaint and summons."

All in all, the uncontradicted evidence presented during the hearing establishes that Smith is the owner of the $11,180. And the trial court neither concluded she was not the owner nor made any findings or statements questioning her credibility. Accordingly, under Section 34-24-1-4(b), the money must be released to her.

## Conclusion

For the reasons articulated above, we reverse the trial court's forfeiture order and remand for the court to order the money released to Smith.

Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEY FOR APPELLANT SMITH

Stephen G. Gray

Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita

Attorney General of Indiana

Justin F. Roebel

Supervising Deputy Attorney General

Indianapolis, Indiana